# Heffner *versus* Lewis *et al.*

1. Plaintiff and defendants leased adjoining coal-lands to the same lessees; a tunnel was made through plaintiff's land to reach defendants', on which was the outlet of the slope; rails were laid by lessees on the track in the tunnel. Their leasehold interest in the defendants' land was levied on, with the appertenances, consisting of a breaker, &c., "and railroads in and about and connected with said mines." The rails had been removed from the track, and plaintiff claimed that they had been delivered to him for rent. In an action of trover for them, *Held*, that whether the rails were included in the levy was properly submitted to the jury.

2. Machinery erected by a lessee to carry on his business is personal property during his term; it may be sold on execution, and the purchaser may remove it before the expiration of the term.

March 4th 1873. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county* : No. 51, to July Term 1871.

This was an action of trover, brought August 1st 1865, by Samuel Heffner against Lawrence F. Lewis Jr. (who was served), and others not served, for 890 yards of iron rails.

On the 10th of February 1854, Lawrence Lewis and Robert M. Lewis leased to William Brittain and Charles Brittain, for the term of fifteen years, the right to mine, dig and carry away coal from the land of the lessors, near Minersville, in Schuylkill county, "from a series of veins of coal which have been proven and cut by a tunnel driven by George Sponsler to the Peach Mountain vein on said tract," &c.

On the 15th of November 1854 the Brittains, to secure the payment of $2000, with interest on the first days of June and July then next, mortgaged to their lessors the above-mentioned mining right, "together with the engines and breaker-machinery, slope fixtures and buildings and improvements, mining implements, &c., on, at, or erected at and appertaining to said coal-lease, colliery, &c., on said tract of land as used and now in the possession of the said William and Charles Brittain on said premises, as far as their right to or interest in the same under said lease extends."

[Heffner *v.* Lewis.]

The defendants are the successors of the above named Lewises.

On the 24th of May 1856, the plaintiff leased to the Brittains, "the right and privilege to mine and raise coal as the right and property," of the Brittains " on the tract of land * * * adjoining lands late of R. M. and S. Lewis, and known as the Dreibelbies tract," for thirteen years from February 10th 1856, " said mining of coal to be restricted to the veins of coal, one known as the Peach Mountain vein, and the other the vein next north of the Peach Mountain vein." It was further agreed by the lease, that the Brittains might " have the right to drive the tunnel they are now driving upon the Lewis tract of land in and through the said Dreibelbies tract, from where the said tunnel now strikes the last mentioned tract to the Peach Mountain vein, and also that the said (Brittains) may draw, carry and take through or over the said tunnel, so far as the same may be driven on the said Dreibelbeis tract, all the coal they may mine on the Lewis tract * * * without any charge for the same " ; the Brittains to pay 25 cents per ton for coal mined from the plaintiff's veins ; the plaintiff to have the same remedy for collecting the coal rent as in other cases under the landlord and tenant acts.

The cause was tried April 24th 1871, before Ryon, P. J.

The plaintiff, Heffner, testified that the Brittains sank a slope on the Lewis tract and tunneled to plaintiff's land ; the Brittains leased to one De Haven, who put all the iron in dispute on the gangway which was not opened till De Haven went in ; the Brittains paid plaintiffs no rent ; De Haven paid him some rent and gave him the railroad iron which De Haven had laid on plaintiff's land. Morgan and Weist afterwards leased from plaintiff, and at that time he owned the iron on the land ; it was taken up before the lease expired because it was necessary to sink a slope, and the tenants could not agree with the Lewises, and abandoned the workings ; Weist showed plaintiff the iron at the head of the slope, and told him to haul it away ; he sent for it but did not get it ; it was taken out and sold ; there were 1337 feet of the gangway laid with iron on plaintiff's land.

T. Morgan, testified that the iron was on the land leased from Heffner ; Morgan and Weist had taken out under this lease all the coal on the Heffner tract ; witness took the iron to the top of the slope on Lewis's land and showed Heffner the iron which witness understood belonged to him ; he said if they sank again he would leave it for their use.

R. Winlack testified that he purchased from the Lewises all the machinery and iron at the colliery including that in dispute.

The defendants gave in evidence a fi. fa., Mourer & Witzel *v.* W. & C. Brittain, to September Term 1858, and an alias fi. fa., Same *v.* Same, to December Term 1858 ; the levy was as follows :

"Levied on all the right, title, interest of William Brittain & Chas. Brittain, of, in and to a certain coal-lease having about eleven

years to run, on lands of R. M. & L. Lewis, situate in the borough of Minersville, and partly in Branch township, Schuylkill county, and known as the Lewis colliery, with the appertenances, consisting of a frame coal-breaker with a double set of schutes and screens, &c., a forty-horse breaker engine, a sixty-horse power hoisting and pumping engine, a thirty-horse power engine, frame slope-house, frame stable, frame office, frame oil-house, frame powder-house, frame blacksmith shop, railroads in, about and connected with said mines, twenty drift cars, and all other machinery belonging to said breaker, as the property of William Brittain and Charles Brittain.

The writ was endorsed: "1859 January 22d. Property within mentioned sold on this writ and writ of levari facias, No. 168, · March T. 1859, to George S. Repplier, for three thousand dollars and proceeds of sale, applied as follows, to wit: on account of rent claim of Lawrence Lewis *et al.,* $2943.46; to costs on this fi. fa., $35.95, and to costs on levari facias, No. 168, March T. 1859, $20.59, and nulla bona as to debt within mentioned.

Also levari facias at the suit of the Lewises against the Brittains, on the coal-lease-mortgage of November 15th 1854, to sell the property as described in the lease.

The sheriff returned: "1859, January 22d. Property within described sold on this writ, and writ of· alias fi. fa., No. 285, Dec. T. 1858, to George S. Repplier, for three thousand dollars, and proceeds of sale applied as follows: on account of rent claim of Lawrence Lewis *et al.,* $2943.46; to costs on this writ, and on fi. fa. No. 285, Dec. T. 1858, $35.95.

Also fi. fa., No. 106, to October T. 1860, Pott *et al. v.* George S. Repplier, and No. 107, to same term, Charles A. Repplier *v.* Same, under which the sheriff levied "on all the right, title and interest of Geo. S. Repplier, of, in and to a certain coal lease having about nine years to run, on land of R. M. & L. Lewis, situate partly in the borough of Minersville, and partly in Branch township, Schuylkill county, and known as the "Lewis colliery," with the appertenances, consisting of a frame coal-breaker, with a double set of schutes, screens, rollers, and elevators, a forty-horse power steam-engine for breaking coal, with boilers and gearing, a sixty-horse power hoisting and pumping engine, with boilers and gearing, pumps, pump-rods, slope-chain, frame slope-house, frame stable, frame office, frame oil-house, frame powder-house, frame blacksmith shop and carpenter shop, frame slope-house with twenty-five horse power steam-engine, drum with wire rope, railroads in, about and connected with said mines :" and on the 26th of October 1860 sold the property to the Lewises for $4750.

Also lease dated Oct. 29th 1860, from the Lewises to Charles A. Repplier, for the "Lewis colliery," and assignment of this lease January 17th 1862, to Wiest & Morgan.

[Heffner v. Lewis.]

J. Weist, one of the assignees, testified that they went into possession of the colliery under the assignment, and took possession of the railroad tracks in the veins to mine the coal; the tracks were necessary for the working the Peach Mountain vein; there was no way of working it at this point but through Lewis's land: they got the lease from Heffner after they went into the colliery under the assignment; about May 1862, they had had no understanding. with Heffner until after the assignment from Repplier.

The defendants gave evidence that the Brittains owed De Haven about $10,000, on August 1st 1856; Brittains and De Haven entered into a contract by which De Haven was to have the Lewis colliery and another colliery until the profits paid the debt, when Brittains were to have the collieries, &c., back; there was no transfer on the leases, the personal property was at the date of the contract transferred to De Haven; he never got his money out; the colliery was sold as Brittains'; De Haven worked under Heffner and took coal from his land.

James H. Campbell, Esq., testified that he had been agent for the Lewises from 1844 to 1866, and had charge of the Lewis colliery; Weist & Morgan threw up the lease about December 1863, and witness made arrangements with Morgan & Harris to take out the iron. Heffner claimed the iron as owner of the land on which it was; witness never heard him claim as purchaser from De Haven.

W. Brittain testified that the Brittains did not sell the colliery lease to De Haven, but gave it to him to work out their debt; the leases were sold out and De Haven had nothing more to do with it.

The defendants gave evidence that on the 29th of August 1868, De Haven made an assignment for the benefit of his creditors to L. C. Dougherty.

The plaintiff in rebuttal offered in evidence the record from the docket of a justice of the peace of a proceeding by Heffner against the Brittains and De Haven to dispossess them for the non-payment of rent; he gave evidence also for the purpose of supplying part of the record which was not produced. The court rejected the offer, on the ground that the evidence of the lost record was not sufficient, and sealed a bill of exceptions.

He gave evidence that Dougherty, the assignee, &c., of De Haven, had worked the Lewis colliery until it was sold by the sheriff, when he at once gave up the possession; Heffner claimed rent whilst Dougherty was in possession; De Haven owed Heffner $1400 or $1500 for rent. Heffner further testified that De Haven gave him the iron before December 1857, and afterwards owed him between $1200 and $1500. De Haven said he would give Heffner this iron on account of rent; no price was fixed for the iron.

The plaintiff's points, with their answers, were:

1. "The levy and sale by the sheriff of the leasehold property
23 P. F. SMITH—20

[Heffner *v.* Lewis.]

of the Brittains did not include the lease of Heffner to the Brittains, and consequently passed no title to any improvements on the land of Heffner, but must be confined to the leasehold interest fixtures and improvements of the Brittains on the land of the defendants."

Answer: "The lease by Heffner to Brittains was not sold by the sheriff, but the levy being upon all the railroads in and about the colliery, was in terms sufficiently comprehensive to include the railroad in the Peach Mountain, for that vein was worked in connection with the colliery, and was a part of the same colliery, and the railroads were all connected, forming one line of road from the bottom of the slope to the various points from which coal was dug. We do not however instruct you that the sheriff's sale did or did not convey any title to any improvements on the land of Heffner; you must determine that from the evidence and the instruction in our general charge. We therefore decline to give this instruction, but refer the facts to the jury."

2. "The levy and sale by the sheriff of the leasehold interest, fixtures and improvements of George S. Repplier, passed no title to the purchaser of any of the improvements on the land of Heffner, nor were the same included in any of the subsequent transfers or assignments of the leasehold interest in the colliery leased and owned by defendants."

Answer: "The sheriff's levy and return of sale was comprehensive enough to embrace all the railroads which were connected with this colliery and belonging to George S. Repplier. We decline however to say what did or what did not belong to Repplier, and what particular property passed by the sheriff's sale and the subsequent transfers—that is a question of fact for the jury. For the reasons given above and in our general charge we decline to affirm this point."

3. "The defendants have failed under the evidence, documentary and parol, to show any outstanding paramount title to the railroad iron in dispute, either in the defendants or any other persons."

Answer: "This instruction we decline to give, as it is a question of fact for the jury."

The court charged:

"This action was brought by the plaintiff to recover damages from the defendants for taking and carrying and converting to their use a quantity of railroad iron. The plaintiff claims to have purchased the iron in question in the spring or summer of 1857 from William De Haven, who was then working the Lewis colliery, and who claimed the iron. You will recollect the plaintiff's testimony upon this subject and any other testimony bearing upon this question. The plaintiff also swears that he was in the possession of this iron by himself and his tenants, and if you should find the fact of purchase by the plaintiff as claimed by him and that he re-

[Heffner v. Lewis.]

mained in possession, we then instruct you that the plaintiff would be entitled to recover.

"The defendants claim title to this iron also by purchase, and allege the following facts as evidence of title:

"The defendants leased the land upon which the Lewis colliery was originally erected to the Brittains in 1854 for fifteen years. Brittains sunk a slope and put up the breaker improvements, but found that they could not work the Peach Mountain vein without working some of it on the plaintiff's land, and they obtained a lease from the plaintiff in 1856, to run for the term of fifteen years.

"The lessees, Brittains, became involved and sold the lease and personal property belonging to this colliery to William De Haven, and also the right to use the fixtures, railroads, &c., until he got out of the colliery what Brittains were owing him, and then the whole was to revert to Brittains.

"De Haven went into possession of the colliery and mines, but becoming involved he made a general assignment for the benefit of creditors to L. C. Dougherty and Mr. Garner. The assignees worked this colliery until January 22d 1859, when it was sold by the sheriff to George S. Repplier.

"Now what property was sold must be determined from its levy under the circumstances of this case. The levy is upon all the right and title of the Brittains in the coal-lease of R. M. & L. Lewis, known as the Lewis colliery, with the appurtenances, buildings, breaker, machinery, &c., *railroads in and about the mines and connected with said mines*. The question is whether the levy on the railroads was a levy upon the railroad on Heffner's lands. The Brittains, as we have said, had a lease from R. M. & L. Lewis, for the land upon which the slope was erected. They subsequently to the date of that lease, in 1856, obtained a lease from Heffner to work the Peach Mountain vein, and drove a tunnel from the slope across to that vein, at the point where the tunnel reached the Peach Mountain vein, and for a considerable distance east and west from that point; the coal in the vein was partly upon the Heffner tract; by these two leases the workings in the two tracts constituted but one colliery. When the levy was made upon all the railroads in and about the mines and connected with said mine it was a levy upon all the railroads at the colliery, and undoubtedly embraced the railroad upon the Heffner land, and if the roads belonged to Brittain in 1859 (January 22d) then the sheriff's sale conveyed the title to the iron upon the Heffner tract to Mr. Repplier.

"Again, Oct. 9th 1860, the sheriff levied a fi. fa. upon a judgment against Geo. S. Repplier, upon the Lewis colliery, and the railroads in, about and connected with said mines. On 26th Oct. 1860, the sheriff sold this colliery as levied upon, and railroads to the Lewises, the defendants. This levy and sale undoubtedly

conveyed all Repplier's interest in all the railroads connected with the mine which embraced the road on Heffner's land.   If Geo. S. Repplier had a title to the railroad iron on Heffner's land, then the sale to Lewises conveyed that title to Lewis.

" R. M. & L. Lewis made a lease of the Lewis colliery, and its appertenances to Charles A. Repplier, binding the lessee to keep all the gangways, railroads, &c., in repair.

" On the 17th Jan. 1862, the leesee, Chas. A. Repplier, assigned his interest in this lease to Weist & Morgans, who with the consent of the Lewises went into possession.   You will observe that the lease to Charles A. Repplier by the Lewises did not sell the premises, but gave the right to the tenant to use the fixtures for the term of the lease.   It gave to Repplier no right to remove any of the landlord's property, and the transfer to Weist & Morgans bound them to keep all the covenants in the lease to Repplier, and of course Weist & Morgans could not take up any of the railroads and let Heffner nor any body else other than the landlords have it if the iron belonged to Lewises.

" But it is contended by the plaintiff, that Weist & Morgans, in June 1862, took a lease from Heffner, and agreed in that lease to take up the iron, and deliver it at the head of the slope to Heffner ;. now if Lewises took a title to the iron upon Heffner's land by virtue of the sheriff's sale as the property of Repplier to Lewises, Weist & Morgans could not enter into any arrangement with Heffner, by which they could give or Heffner could get any right to the iron ; such an arrangement would be without any effect as against the interest of Lewises.

" Some question has been raised about the right of Lewises to purchase and use the railroad on Heffner's land.   You will bear in mind that at the time the iron was removed Heffner's lease to Brittains, under which the iron was laid upon the gangways, had not expired.   A colliery is an improvement for manufacturing purposes, and a tenant may erect fixtures like a railroad in a mine, and remove them again from the land during his term.   When the fixtures are sold as the property of the tenants, and bid in by third parties, such third persons may remove the fixtures if the purchaser goes into possession of the fixtures as is claimed by the defendants in this case without removing it, but does remove it before he is lawfully ejected, and before the expiration of the lease, the. purchaser's title is good if he acquired a title by the sale under which he claims."   * * *

The verdict was for the defendants.

The plaintiff removed the record to the Supreme Court and there assigned for error:

1–3. The answers to his points.

4. The rejection of his offer of evidence.

[Heffner *v.* Lewis.]

The remaining assignments were, in a number of specifications, to the charge of the court.

*J. Wright* and *B. W. Cummings*, for plaintiff in error.—What property passes by a sheriff's sale is to be determined by the levy: Grubb *v.* Guilford, 4 Watts 223. The sheriff could not sell fixtures without consent of the owner of the land: Mitchell *v.* Freedley, 10 Barr 198.

*W. R. Smith* and *J. W. Ryan*, for defendants in error.—The levy containing ambiguity that might be removed by parol evidence to be submitted to the jury : Scott *v.* Sheakly, 3 Watts 50 ; Dolan *v.* Briggs, 4 Binney 496 ; Shoemaker *v.* Ballard, 3 Harris 92.

The opinion of the court was delivered, May 17th 1873, by

MERCUR, J.—This action was brought to recover the value of a quantity of iron rails. They had been taken and converted by the defendants.

The plaintiff has filed fourteen assignments of error. The first three may be discussed together. The Brittains had leased, for mining purposes, adjoining lands of the plaintiff and of the defendants respectively. They worked veins upon the land of each. In order to mine some of the coal on defendants' land it was necessary to cross plaintiff's land, but making the outlet on defendants' land. They sunk a slope, erected a breaker, built engines, &c., on the land leased from the defendants, and drove a tunnel and gangways upon the land leased of plaintiff. Under authority from the Brittains these rails were laid in track, in the tunnel and gangways. Subsequently all the Brittains' leasehold interest acquired from the defendants was sold at sheriff's sale, under a mortgage. At the same time the sheriff also sold upon a fi. fa. all the right, title, and interest of the Brittains in the lease on the defendants' land, with the appertenances, consisting, *inter alia*, of a breaker, schutes, screens, engines, slope-house, other buildings and machinery "and railroads, in about and connected with said mines." At both sheriff's sales the property was purchased by one Repplier, under whom the defendants claim title to the rails. Whether these rails in question were included in the levy and sale was properly submitted to the jury and the points were correctly answered.

The fourth assignment of error is not sustained. Sufficient ground had not been laid to prove the contents of lost records ; and the evidence offered was also irrelevant.

The remaining assignments of error relate to the charge of the court. The proof of plaintiff's purchase of the iron from De Haven, and his subsequent possession thereof, was so meagre and unsatisfactory, that the court submitted it to the jury quite as

[Heffner *v.* Lewis.]

favorably for the plaintiff as ought to have been done. The rails were laid to facilitate the working of the mines under the tenancy. The tenant had the right to remove them during the term. De Haven went into possession under the Brittains. He assigned to Dougherty, who was in possession at the time of the sheriff's sale. Dougherty at once gave up the possession to Repplier. All Repplier's interest in the property was purchased by the defendants. They took away the rails before the expiration of the term for which the plaintiff had leased the premises.

The jury has found that the rails were covered by the levy and sale. It is well settled that an engine or other machinery erected by a lessee to carry on the business in which he is engaged is personal property, during his term: Lemar *v.* Miles, 4 Watts 330; White's Appeal, 10 Barr 253. As such, they may be sold on execution, and the purchaser thereof may, like the tenant, remove them before the expiration of the term. Taking the charge as a whole we see no error therein.

Judgment affirmed.