.| 92    123|
217    ²394|

92    12‾3
f221   ⁴357

## Bismark Building and Loan Association *versus* Bolster et al.

1. As a general rule, a mortgage of personal property, like a sale, is void as against creditors if a corresponding change of possession does not accompany the same. But where a removal of the property is impracticable, when all has been done that reasonably can be to mark the change of ownership and possession, the law is satisfied.

2. A long term of years, of very great value, is not such an interest in land as is subject to the lien of a judgment; it is a chattel, subject to seizure and sale, by a constable, on an execution issued by a justice of the peace.

3. All kinds of property may be mortgaged to secure debts. A mortgage of personal property, in some respects, is like a pawn or pledge. Without delivery of possession to the mortgagee, it is a nullity as to creditors unless made under some statute; but if possession be given, the mortgagee may hold it till his debt is satisfied. At most, a creditor of the mortgagor can only sell it subject to the claim of the mortgagee, whose lien is not divested by the sale, and who is not entitled to share in the proceeds, and the purchaser at sheriff's sale takes just the interest, if anything at all, which was left in the mortgagor.

4. It is not the intendment of the Acts of September 23d 1783, March 28th 1820 and April 6th 1830, relating to mortgages, to include leaseholds in the words properly signifying freeholds. The Act of March 28th 1820 has no relation to mortgages of leaseholds, nor have any other acts which relate exclusively to mortgages of "real estate."

5. A mortgage of an estate for years may be recorded, any time within six months, where it does not come within the acts respecting collieries, mines and manufactories. If the mortgagee take and retain possession of the property it will be as free from liability to answer an execution against the mortgagor as would any other personal estate, and once free, because under his dominion, it would continue so. The mortgage is of such a nature that under no circumstances can it come into competition with the judgment for the proceeds of sale on the execution; the claim is on a chattel, and notice to the purchaser supplies the place of recording.

6. An adverse claimant of a chattel, sold on execution against another, cannot take the money made from the execution-creditor; his remedy is by an action for recovery of the property, or damages.

November 11th 1879. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Green, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1879, No. 305.

This was an action of ejectment brought by Peter Bolster, Frederick Erk and Frederick Heidenreich against the Bismark Building and Loan Association of Allegheny City, to try the title to a leasehold in a lot of ground on Middle street, in Allegheny city, on which are erected four small two-story brick dwelling-houses. The fee-simple title in the lot is vested in Mrs. Mary E. Schenley, who leased the same to Dr. A. Weinmann, some twelve or fifteen years ago, for a term of years, which expired April 1st 1877. Weinmann erected the four dwellings at his own expense, and by the terms of the lease he had the right to remove the same

[Bismark Building & Loan Association *v.* Bolster.]

at the expiration of the lease. While Weinmann held this lease, he gave a mortgage thereon to the Bismark Building and Loan Association for money loaned. When this lease expired, a new one was granted to Weinmann for the term of twenty years from April 1st 1877, at the annual ground-rent of $69.75. Weinmann assigned this new lease to the Bismark Building and Loan Association on May 30th 1877, "as collateral for the payment of a debt." The plaintiff in error claimed on the trial that this assignment was really intended as an absolute sale, but on this question the jury found against it. This assignment was never recorded. From the time the houses were completed until after the sheriff's sale, under which defendants in error claim title, the houses were occupied by tenants of Dr. Weinmann. On June 15th 1877, the Friendship Building and Loan Association of Allegheny City issued an execution on a judgment for $2605.68, which it had against Dr. Weinmann, entered at No. 581, January Term 1873, which execution was delivered to the sheriff of Allegheny county on the same day (June 15th 1877) by virtue of which the sheriff levied on the leasehold and dwelling in dispute, and sold the same to the defendants in error on July 23d 1877. The president of the Bismark Building and Loan Association of Allegheny City, plaintiff in error, John Born, and the secretary thereof, Anton Schmidt, were present at this sheriff's sale, and gave notice that the association had a mortgage on the leasehold, and the secretary had a statement showing the amount which the association claimed, but they did not bid on the property. There were three prior executions in the sheriff's hands in favor of two other associations against Dr. Weinmann, two of which were issued and delivered to the sheriff on June 8th 1877, for $754.15 and $708.75, respectively, and the third for over $1300, issued on June 12th 1877, and delivered to the sheriff on the same day, on which executions the same leasehold was levied upon, but before the sale rules to open these three judgments, and staying proceedings in the meantime, were obtained. Pending these rules, the sale was made on the execution of the Friendship Building and Loan Association. All the rules to open the judgments were afterwards discharged. Dr. Weinmann was a prominent stockholder in all the associations having executions against him, and his ownership of the property, and that the same was, and had been for years, in the occupation of his tenants, was well known to the said associations, and also to the defendants in error, the purchasers, all of whom lived in the immediate neighborhood of the property.

The defendant proved, and it was not disputed, that it took possession and control of the property in dispute, on the 30th of May 1877, and proved that it got possession and control of this leasehold and improvements in the following manner: Dr. A. Wienmann leased under a prior lease the lot of ground in dispute

for a term ending the 1st day of April 1877, and erected four two-story brick dwelling-houses thereon, and during the continuance of this prior lease, and about four years before the expiration thereof, he, Weinmann, borrowed of the plaintiff in error $5980, and gave a mortgage on the leasehold to secure that amount, which was duly recorded. When this prior lease expired, April 1st 1877, there was still due and unpaid on this loan the sum of $3648, and at that time the property had become reduced in value, not being worth at most more than $2000. Dr. Weinmann had been unfortunate in business, had no money whatever and no means of raising any; indeed, was so reduced that he could not pay the ground-rent and taxes of this property then in arrears, which the Schenley estate required to be done before it would again lease the property. On the 30th of May 1877, two months after the prior lease expired, it was agreed between the plaintiff in error and Dr. Weinmann that the plaintiff in error should pay the ground-rent and taxes then in arrears, and procure a lease of the property, to be made direct to it, the plaintiff in error, in discharge of the mortgage debt.

The plaintiff in error paid the ground-rent and taxes in arrears, and sought to have the lease made in accordance with the agreement with Dr. Weinmann, but the agent for the Schenley estate demurred, and stated that the lease should be made to Dr. Weinmann, and then assigned by him to the plaintiff in error, which was then and there done, the assignment being in the following words endorsed upon the lease: "For and in consideration of a certain sum of money which I owe the Bismark Building and Loan Association, and for the better securing the payment of the same to the said building and loan association, I hereby assign, sell, transfer and convey to said association, as collateral security for the payment of the same, all my right, title and interest in and to the foregoing lease and improvements.

"Witness my hand and seal this 30th day of May 1877.

"Dr. A. Weinmann. [seal.]

"Witness: Francis Torrance."

This lease, although it has a different date, was executed with the above assignment at the same time and place, and delivered directly from the Schenley agent to the defendants.

Upon the trial in the court below the question submitted to the jury was as to the character of the assignment, whether it was intended by the parties to it to be absolute or merely as collateral for the payment of the money due and owing. On the part of the plaintiffs it was contended that the assignment was collateral, and if so it was void as to creditors, and plaintiffs should recover notwithstanding the possession by the defendant. On the part of the defendant, it was contended first, that the assignment was intended to be, and was in fact, absolute and in satisfaction of the mortgage

debt, and that the insertion of the clause as to collateral security was a mistake; and second, that even if collateral, when accompanied immediately by the delivery of possession, both of the lease and property described therein, the assignment.was good and valid until the payment of the debt secured.

The following were among the points of plaintiffs, all of which the court, Collier, J., affirmed:

2. That a mortgage on a leasehold or term of years in land, must be recorded (see Act of May 28th 1715, sects. 8 and 9, 1 Bright. Purd. Dig. 477 and 480), in order to make it valid as to subsequent execution-creditors.

3. That a mortgage, either on real estate or on a leasehold in land, is discharged by a sheriff's sale under a judgment either before or after the mortgage, unless the lien of the mortgage is preserved by some statute, notwithstanding the sheriff's sale.

5. That a mortgage of leasehold dwelling-houses is not within the protection of the Act of April 6th 1330 (1 Bright. Purd. Dig. 478), nor is it within the Act of March 23d 1867, section 3 (1 Bright. Purd. Dig. 479), and the lien of such a mortgage is discharged by a sheriff's sale under a subsequent execution, and a purchaser under such execution takes the property clear of the mortgage.

6. That the lien of the mortgage of the defendants, being a mortgage on leasehold dwelling-houses, was discharged by the sheriff's sale of the property to the plaintiffs, and the latter took the property clear of the defendants' mortgage, and are therefore entitled to recover.

"Affirmed if the jury find that the assignment was taken as collateral security, not absolutely."

The following were among the points of the defendant, which the court refused:

2. That if the jury believe Dr. Weinmann owed the building association $4000, or thereabouts, on the 30th of May 1877, and the assignment was made to them, which is in evidence of the same date, and that the building association took possession immediately under this assignment, and proceeded to collect rents, pay taxes, &c., in that case taking the assignment at what it states on its face, the defendant being in possession was notice to all claimants upon Dr. Weinmann, and no writ of fieri facies issued after that time upon which the sheriff made a sale, could affect the rights of the defendant.

3. The defendant being in possession at the time plaintiffs issued their writ of fieri facias upon which the sheriff sold this property, the defendant can retain possession of the property (aside from the evidence submitted) until it has been paid the money owed it.

[Bismark Building & Loan Association v. Bolster.]

Verdict for plaintiffs, when defendant took this writ, and alleged, inter alia, that the court erred in their answers to the above points.

*J. S. Cook* and *R. B. Petty*, for plaintiff in error.—The lease in this case was for twenty years, and is expressly exempted from the operation of the recording acts by section 3 of March 18th 1775 (Purd. Dig. p. 473, sect. 78), which reads as follows : " Provided always, That this act shall not extend to any lease not exceeding twenty-one years, where the actual possession and occupation goeth along with the lease, anything in this act to the contrary notwithstanding." In Williams *v.* Downing, 6 Harris 60, it is held that leases for years under twenty-one years, accompanied by possession, need not be recorded nor assignments of such. We hold that neither the lease nor the assignment were within the purview of the recording acts. It has never been the practice in this state to record leases of lands and tenements for years or their assignment. If the rules of law as to pledges of chattels apply to the case of a chattel real, there can be no question as to the right of the pledgee or mortgagee in possession as against creditors of the mortgagor. Fry *v.* Miller, 9 Wright 441.

In Luckenback *v.* Brickenstein, 5 W. & S. 145, it was held that the mortgage of a leasehold was governed by the laws concerning chattels, and that such a mortgage, accompanied by delivery of possession, would be valid against execution-creditors.

A term of years is a chattel which might always be sold on a common-law execution. Our statutes subjecting land to the payment of debts left the writ of fi. fa. as to chattels exactly where it found it: Dalzell *v.* Lynch, 4 W. & S. 256 ; Sterling *v.* Commonwealth, 2 Grant 162 ; Comyn's Digest, vol. 4, p. 229.

When goods or chattels are pawned, or demised for years, or they have been distrained or in any other way are subject to a lien in the hands of a third person, the sheriff can only seize and sell the right of the defendant in such goods, subject to the rights of such third person : Bouvier's Inst., sec. 3391 ; Comyn's Dig., vol. 4, p. 230; Brightly's Purd. vol. 1, p. 635, sect. 13.

*A. E. Weger* and *John H. Kerr*, for defendants in error.—The assignment of the lease as collateral security for a debt was, at most, only a mortgage: Russell's Appeal, 3 Harris 319 ; Luch's Appeal 8 Wright 519; Fry *v.* Miller, 9 Id. 441 ; Edwards *v.* Trumbull, 14 Id. 509. Leasehold mortgages were included in the Act of 1715, and must be recorded to make them valid as to subsequent judgment creditors. While the Act of 1775 excepts leases not exceeding twenty-one years, accompanied by actual possession, it does not except mortgages on leaseholds. The mortgage on the leasehold was discharged by the sheriff's sale : Willard *v.* Norris, 2 Rawle 64 ; McLanahan *v.* Wyant, 1 P. & W. 112; Hoover *v.*

Shields 2 Id. 135; Corporation v. Wallace, 3 Rawle 109; Hibberd v. Bouvier, 1 Grant 266; Strauss's Appeal, 13 Wright 353; Dickinson v. Beyer, 6 Norris 274; Uhler v. Hutchinson, 11 Harris 110; Girard Ins. Co. v. Farmers' Bank, 7 P. F. Smith 388; Wertz's Appeal, 15 Id. 306.

The possession of the plaintiff was neither actual nor constructive: Bowers v. Oyster, 3 P. & W. 239; Hulings v. Guthrie, 4 Barr 124; Wilson v. Schoenberger, 7 Casey 295; s. c. 10 Id. 121; Corpman v. Baccastow, 3 Norris 363.

But even if the plaintiff in error had such possession as would amount to constructive notice, in case its assignment had been an absolute sale, yet in the case of an unrecorded mortgage the notice must be actual personal notice before the lien of subsequent creditors attach, for in the case of unrecorded mortgages, or judgments not entered on the judgment docket, the law has provided one kind of constructive notice only, to wit, by the record : Smith's Appeal, 11 Wright 128; Edwards v. Trumbull, 14 Id. 512; York County Bank's Appeal, 12 Casey 458; Lahr's Appeal, Leg. Int., Oct. 17th, 1879, p. 403; Britton's Appeal, 9 Wright 172; Peebles v. Reading, 8 S. & R. 495; Scott v. Gallagher, 14 Id. 333; Marshall v. Dunham, 66 Maine 539.                                         •

Mr. Justice TRUNKEY delivered the opinion of the court, November 17th 1879.

This ejectment is to recover possession of an estate for years which had been granted to A. Weinmann. The lease was dated March 30th 1877, executed on the 30th of the following May, and Weinmann, at the time of its delivery, assigned all his interest therein and the improvements thereon to the defendants below, as collateral security for a debt he owed them; and gave them a power of attorney to collect the rents, as collateral security, until all debts due them are paid in full. At the trial the defendants claimed that the assignment was intended to be an absolute payment of the debt, and gave evidence tending to prove a mistake in the writings, and that actually they were given and received in payment; but the jury found against them on this point. Hence, in the present hearing, their title rests upon the assignment and power of attorney as written, and they concede it is a mortgage.

The Friendship Building and Loan Association held a judgment against Weinmann for $3520, which was entered January 23d 1873; and June 19th 1877, by virtue of an execution issued to collect the same, the sheriff levied on the leasehold and improvements and sold them to the plaintiffs, to whom he delivered a bill of sale dated August 16th 1877.

As between Weinmann and the defendants the mortgage is valid. The sheriff's sale having been on a judgment prior in date, the

[Bismark Building & Loan Association *v.* Bolster.]

mortgage has no superior equity, and the purchasers can recover, unless the fact of possession in the mortgagees entitles them to hold the property till their debt shall be paid. If they were so entitled the defendants' second point ought to have been affirmed, for there was sufficient evidence of possession, taken immediately under the assignment, to warrant a finding of the fact. As a general rule, a mortgage of personal property, like a sale, is void as against creditors, if a corresponding change of possession does not accompany the same. But when a removal of the property is impracticable, when all has been done that reasonably can be to mark the change of ownership and possession, the law is satisfied. Here the property was occupied by tenants of Weinmann; and if the lease, at the time of its execution, was assigned and delivered to the mortgagees, with the knowledge of the lessor, and the lessee's tenants were notified thereof, and that they should pay the rents accordingly, which they did, and the lessee, Weinmann, withdrew from the occupancy and control of the property, the transfer of possession was complete. Indeed, the learned judge of the Common Pleas deemed the evidence sufficient to submit, as shown by his instruction that if the defendants "took this property from Weinmann as absolute payment of what he owed them, and took possession of it," the assignment would be good and they could hold it. He held, that if taken as collateral security—a mortgage —the plaintiffs could recover, even if the defendants had taken possession.

Mere possession of an estate for years is akin to that of an estate for life in fee. The term of a tenant is as immovable from a specific tract of land as is the freehold. Estates for years are often of greater value than life-estates, and not infrequently have been mortgaged. Anciently they were of little importance, and then those rules were established which still pervade our laws, marking the distinction between freeholds and estates less than freehold. A long term of years of very great value is not such an interest in land as is subject to the lien of a judgment, it is a chattel, subject to seizure and sale by a constable on an execution issued by a justice of the peace. All kinds of property may be mortgaged to secure debts. A mortgage of personal property, in some respects, is like a pawn or pledge. Without delivery of possession to the mortgagee, it is a nullity as to creditors, unless made under some statute; but if possession be given, the mortgagee may hold it till his debt is satisfied. At most a creditor of the mortgagor can only sell it subject to the claim of the mortgagee, whose lien is not divested by the sale, and who is not entitled to share in the proceeds. The purchaser at a sheriff's sale takes just the interest, if anything at all, which was left in the mortgagor. Whether the mortgage of a leasehold is within these familiar principles is the pivotal question in this cause.

11 Norris—9

The Act of May 28th 1715, section 8, provides that, "No deed or mortgage, or defeasible deed in the nature of mortgages, hereafter to be made, shall be good or sufficient to convey or pass any freehold or inheritance, or to grant any estate therein for life or years, unless such deed be acknowledged or proved, and recorded within six months after the date thereof, where such lands lie, as hereinbefore directed for other deeds." Section 9 of the same act provides for the entry of satisfaction by mortgagees "of any real or personal estates." It is observable that no personal estate is within that act save estates for years in lands. By Act of March 28th 1820, all mortgages for any lands, tenements or hereditaments, shall have priority according to the date of recording the same; "and no mortgage or defeasible deed in the nature of a mortgage, shall be a lien until such mortgage or defeasible deed shall have been recorded or left for record as aforesaid;" except mortgages for purchase-money, which may be recorded within sixty days from their execution. The same terms—lands, tenements and hereditaments—omitting estates for years, were used in the Act of 1783, which provided for the validation of mortgages executed between January 1st 1776, and June 18th 1778. In the Act of 1830, and subsequent acts, providing, in case of judicial sale, for the preservation of the lien of a mortgage, when prior to all other liens on the same property, the subject of the mortgage is described as "real estate." Section 8, of the Act of April 27th 1855, authorizes mortgages by the lessees of collieries, mines and manufactories; and the Act of April 3d 1868, Pamph. L. 57, directs the remedy for collection in all cases of mortgages upon leasehold estates. The statutes relating to mortgages reveal, at a glance, that it is not their intendment to include leaseholds in the words properly signifying freeholds. A principal purpose of the Acts of 1783, of 1820 and of 1830, was to define liens of mortgages, their commencement, their preservation; and estates for years were omitted, for no judgment is a lien upon them. Had the various acts all used the words, "lands, tenements and hereditaments," which technically do not embrace estates less than freehold, in stating the subjects of mortgages, then, for reasons given by Chancellor Kent in Johnson *v.* Stagg, 2 Johns. 510, we might adopt his conclusion that leaseholds are within their meaning. But the legislature having employed apt words for the different classes of estates, it would be a misinterpretation to confound one with the other. Therefore, the Act of 1820 has no relation to mortgages of leaseholds; nor have any other acts which relate exclusively to mortgages of "real estate."

Unrecorded mortgages are good between the parties, and against a purchaser with notice, as settled by numerous decisions. It is manifest, that the Act of 1820 was passed for security of liens by judgment: there was no such reason respecting chattels, and they

[Bismark Building & Loan Association *v.* Bolster.]

were left under the terms of the Act of· 1715. Consequently, it is unnecessary, for any purpose, to record a mortgage for an estate for years immediately; it may be done within six months, when it does not come within the Acts respecting collieries, mines and manufactories. If the mortgagee take and retain possession of the property, it will be as free from liability to answer an execution against the mortgagor, as would any other personal estate; and once free, because under his dominion, it would continue so. If levied on and sold, the claim of the mortgagee would be no more divested, than if the property were a horse and sold subject to the mortgage. The mortgage is of such a nature, that under no circumstances can it come into competition with the judgment for the proceeds of sale on the execution—the claim is on a chattel, and notice to the purchaser supplies the place of recording. An adverse claimant of a chattel, sold on execution against another, cannot take the money made, from the execution-creditor—his remedy is by action for recovery of the property or damages. It is so clear, that a mortgage of personalty must be accompanied by possession, to make it valid against an execution in favor of a creditor of the mortgagor, and that a sale on such execution is subject to the mortgage, that it is perhaps, not singular that no case has been cited similar to this. Luckenback *v.* Brickenstein, 5 W. & S. 145, is not in point, though it seems to have been understood, by court and counsel, that possession of a mortgaged leasehold was an essential as against creditors, and, that existing, it was good.

Of course, what has been said of the necessity and effect of a change of possession, applies to an unrecorded mortgage. When recorded within six months, possession not changed, of the effect of a sale on execution, before the date of record, we say nothing. Whether a mortgage of a leasehold, duly recorded, not accompanied by possession, is good against execution-creditors, is not a question in this cause. Possibly such mortgage is valid under the Act of 1715, the record standing for possession.

The sheriff's sale was less than six months after the execution of the mortgage, and neither creditors nor purchasers can complain because it was not then recorded. We are of opinion, that the fifth assignment of error must be sustained. It is unnecessary to specially remark upon the others, they follow the fifth, and what has already been said, gives our views on the various points they present. The jury should have been instructed, that if they found the facts, as assumed in the defendants' second point, the verdict should be in their favor, otherwise for the plaintiffs.

Judgment reversed, and a *venire facias de novo* awarded