## James B. Stark and Ruth Stark, appellants, *v.* F. B. Hight, Helen Asheld and Pierre Asheld.

*Landlord and tenant—Building when a chattel real.*

A lease for years is a chattel real, and a building erected on a chattel is itself a chattel. If this were not so as a matter of law it may be made so by the terms of the lease.

*Landlord's right to preferred claim out of proceeds of leasehold sold.*

It is only in cases where the landlord reserves in his lease the right to forfeit the lease upon nonpayment of rent and the right to re-enter and repossess himself of the premises, that it has ever been held that the landlord has a lien upon the fund raised by sale of the leasehold. In the case at bar no such right was reserved by the landlord.

*Landlord and tenant—Preferred claim for rent.*

Where a building and leasehold both of which are chattels belonging to the tenant are sold under an execution, the landlord has no preferred claim to rent beyond the amount of rent due for one year.

Argued Jan. 20, 1897. Appeal, No. 35, Jan. T., 1897, by plaintiffs, from decree of C. P., Wyoming Co., April T., 1896, Nos. 178 and 179, making distribution of fund in sheriff's hands. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

A case in the nature of a case stated. Before DUNHAM, P. J.

The facts sufficiently appear in the opinion of the court below which is in part as follows :

From the agreement of parties, and the papers submitted, the facts in the case are as follows, viz :

On the 11th day of December, 1883, the heirs of Henry Stark, deceased, leased to Benj. R. Bedford, for a period of ten years, a certain piece of land in Tunkhannock borough, at a yearly rental of $60.00, payable quarterly in advance. It was also a part of the said lease that Bedford should erect a brick building upon the leased premises, and that he, Bedford, might renew the lease, for a further period of five years after its expiration, and at the end of the term of the lease, the heirs of Henry Stark, deceased, had the privilege of taking the building, erected upon the premises, "at a value to be fixed thereon by three disinterested appraisers." And in case the improvements are

not taken at the appraisement then Bedford to have the right to remove the same " within one month after the end of the term or expiration of the lease." This lease was assigned by B. R. Bedford to Pierre Asheld, and was continued by agreement for five years, or until December 11, 1898.

Judgments were entered against Pierre Asheld, and upon March, 31, 1896, two fi. fas. were placed in the sheriff's hands, one in favor of F. B. Hight, for $385, which was received by the sheriff at 6:41 A. M., and one in favor of Helen J. Asheld, for $256.65, which was received by the sheriff at 6:12 o'clock P. M. of said day.

Upon these fi. fas. the sheriff levied upon the property of Pierre Asheld, situated upon the leased premises, on the 1st day of April, and sold the same upon the 8th day of April, 1896, as shown by his return, the whole sale amounting to the sum of $474.06.

At this sale notice was given the sheriff that the property levied upon was subject to a lien for rent prior to all other liens, amounting to $127.30, with interest, and demanding that the sheriff pay this sum to them out of the proceeds of the sale of the property levied upon.

The amount due the heirs of Henry Stark for rent at the time of the levy, it is agreed by all parties, was for two years' rent at $60.00 per year, or $120.

The personal property, situated in the house, upon the premises, sold for $44.06, and the balance of the fund is raised from the sale of the " brick building, etc., and leasehold interest of land with Henry Stark estate, deceased," which amounted to $430.

On the part of the execution creditors of Pierre Asheld it is claimed that the landlord is entitled, under the acts of 1772 and 1836, to but one year's rent out of the proceeds of the sale, or the sum of $60.00, and that the balance should go to the execution creditors.

Upon the part of the heirs of Henry Stark, deceased, it is claimed that the amount realized from the sale of the leasehold estate of the defendant in the execution should be applied first, to the payment of the rent due, without regard to the length of time the rent is due for, and, in support of this proposition, have cited a large number of cases, most of which are cases

where the real estate itself has been sold, and where rent was reserved, or ground rent. These cases are not at all applicable to the case at hand, however, and do not in any way rule this case. Wood's Appeal, 30 Pa. 274, and some others cited, were cases where the lease was for coal property, and where the lessee was taking portions of the real estate, and upon that account were held to be in the nature of ground rent. No case has been cited where, as in this case, the rental was merely for the use and occupancy of the land, where the sale of the leasehold rights of the lessee was applied to more than one year's rent. Yet we are not prepared to say, that where the fund for distribution is raised by sale of such rights, clearly, and so that the amount so raised could be ascertained and shown, that the landlord would not be entitled to the payment of his rent from that fund, without regard to the time for which such rent was due.

In the present case the fund, $430, is raised by sale of a brick building, clearly personal property as much as any other property of defendant in the execution, upon the premises, and " leasehold interest of land with Henry Stark estate, deceased." How much of this fund then, is raised by the sale of the building, and how much by sale of the leasehold? We are utterly unable to determine. And if a landlord cannot receive his rent out of a sale of personal property, where the rent is for real estate and personal property so mixed up as that it cannot be told how much is for the premises and how much is for the use of personalty, we think by the same reasoning, that where the fund is so mixed up that no one can tell from what source the same is realized, or how much from each source, that the court should not assume that a sufficient amount was received from a particular source to pay the full amount of rent in arrears.

We therefore distribute the fund in court as follows, viz :

| | |
|---|---:|
| Amount in Court . . . . . . | $448.98 |
| To heirs of Henry Stark, dec'd, for one year's rent . . . . . . . . | 60.00 |
| Leaving to apply on executions . . . | 388.98 |
| To F. B. Hight, Judgt. in No. 179, April T., 1896 . . . . . . . . | 385.00 |
| Leaving to apply on Judgt. of Helen J. Asheld, No. 178, April T., 1896 . . . . . | 3.98 |

To the above distribution exceptions were filed by the plaintiffs, which were dismissed in an opinion by DUNHAM, P. J., as follows:

In this case, after hearing the parties on a reargument of the case, and carefully considering the authorities again, we are more than ever convinced of the correctness of our former ruling in this case.

[It is only in cases where the landlord reserves in his lease the right to forfeit the lease upon nonpayment of the rent, and the right to re-enter and repossess himself of the premises, that it has ever been held that the landlord has a lien upon the fund raised by sale of the leasehold. In this case no such right was reserved by the landlord.] [2]

It is true the lessor agrees to quit if he does not pay the rent. He also agrees to pay the rent. But if he fails to do either, the landlord has only the right to such remedies as the law affords him. The distribution heretofore made is, therefore, confirmed.

*Errors assigned* were (1) in making the distribution, as appears in the opinion of the court; (2) to a portion of the charge as set out in the second opinion, reciting same; (3–5) to the specific awards in the distribution, recited in the opinion; (6) in overruling the 4th exception to the report of distribution, which exception is as follows: " In holding that the brick building did not constitute a part of the leasehold; and in holding that the brick building was personal property as distinguished from the leasehold, prior to its severance, under the terms of the lease by the parties."

(7) In overruling the 3d exception, which exception is as follows: " In holding there was no evidence showing what part of the fund, represented the value of, and was derived from, the leasehold interest, so called, as distinguished from the brick building on the premises, described in the lease."

*James W. Piatt* and *C. O. Dersheimer*, for appellants.—We claim that the landlord's right of re-entry, for any purpose, as for nonpayment of rent, created by the terms of the lease, gives him a first lien for his rent in arrear, out of the proceeds of a sheriff's sale of the leasehold: Spangler's Appeal, 30 Pa. 277 ; Wood's Appeal, 30 Pa. 274; Miners' Bank v. Heilner, 47 Pa. 452.

*James E. Frear*, for appellees.

OPINION BY BEAVER, J., February 16, 1897:

A lease for years is a chattel real. A building erected on a chattel is itself a chattel: Gaule v. Bilyeau, 25 Pa. 521. If this were not so as a matter of law, the lease of the 11th of December, 1883, between James B. Stark et al. and Benjamin R. Bedford, extended by an agreement of Pierre Asheld, the assignee of Bedford, for five years from the 11th of December, 1893, to the 11th of December, 1898, made the building which was to be erected upon the leased premises personal property. The act of June 16, 1836 P. L. 755, provides that the amount of rent for which the goods and chattels taken by virtue of an execution and liable to the distress of the landlord shall be preferred shall be limited to the amount due for one year. It was held in Pattison v. McGregor, 9 W. & S. 180, that this act did not apply to the ground rent landlord and for a very obvious reason, for, if the owner of the fee and the owner of the ground rent were both entitled to have a year's rent reserved as a preference, the very object of the limitation in the act of 1836 above referred to would be defeated. But there is, therefore, no analogy between a ground rent reserved and the present case. It is claimed by the appellant in this case that he was entitled to be first paid out of the proceeds of the sheriff's sale the sum of $120, being the amount of two years' rent, and this claim is based upon two considerations: First, because the sheriff returns that he sold the leasehold interest of land with a building thereon for $430. That "there was no severance of the building from the leasehold. They were essentially one and were sold as one." And, second, that the clause in the lease under which the lessee, who was the defendant in the execution agreed "on breach of any condition to quit and give up peaceable possession of the premises to the appellants on ten days' notice in writing" was equivalent to the right of the lessor to re-enter and take possession of the premises. Neither of these positions is in our opinion sound. The leasehold interest is the estate which was conveyed by the lessor to the lessee. It does not embrace the house which was erected by the lessee and which, under the lease, he has the right to remove, unless the lessor should at the expiration of the lease exercise the option therein

given him and take the building at an appraisement for which the lease provides. The agreement to quit on ten days' notice conferred no right upon the lessors to re-enter and take possession without more. In case of a breach, they would have been compelled to resort to an action for damages, or, if they desired to secure possession, to obtain it under a landlord and tenant's proceeding or by ejectment. If, therefore, the cases of Wood's Appeal, 30 Pa. 274, Spangler's Appeal, 30 Pa. 277, and Miners' Bank v. Heilner, 47 Pa. 452, went to the extent claimed by the plaintiffs and were in other respects in point, they would not be applicable here. If it had been the intention of the plaintiffs to claim out of the proceeds of the sale the entire amount of rent due and not the amount allowed under the statutory preference of the act of 1836, they might have raised the question more clearly, when the notice of the rent due was given at the sheriff's sale, by demanding a severance of the leasehold from the building and having it sold separately. There is no evidence in the record anywhere to show the amount for which the leasehold was sold. The plaintiffs in their argument now endeavor to supply the lack of evidence upon this subject by calculating the value of the unexpired time of the lease at the annual rental value fixed therein ; but there is nothing whatever to show that it sold at that price or that it would have sold at that price, if there had been a severance between the leasehold estate and the other property upon the premises at the time of the sale. This covers all the errors assigned by the plaintiff and, as we can discover nothing erroneous in the distribution made by the trial judge in the court below, the decree of distribution made by him is affirmed.