The First National Bank of McAdoo, Appellant,
*v.* Reese et al.

Argued January 8, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*George A. Shutack,* with him *John Skweir,* for appellant.

*Ben Branch,* with him *Cletus M. Lyman,* for appellee.

Opinion by Mr. Justice Horace Stern, March 24, 1947:

Otto Reese, defendant in this replevin action, conducted for a number of years an automobile service station on premises in the village of Audenried, Carbon County, which he leased from Lehigh Valley Railroad Company. By a written agreement between him and his son, Cameron S. Reese, dated September 4, 1936, he conveyed to the latter the lease, buildings, fixtures, merchandise, accounts receivable and, in general, all the property including the good will, of this business, to be held by Cameron, his heirs, executors, administrators and assigns forever, "subject, however, to the following limitations: That the said Vendee may not and shall not sell or assign the said business during the lifetime of the Vendor and further that if the Vendee shall predecease the Vendor, then and in that case the title to the said business shall, at the option of the Vendor herein, revert to the Vendor and the fee herein granted and sold to the Vendee shall, at the option of the Vendor, determine upon his death". The agreement provided that if the death of the vendee should occur before the death of the vendor and the business should, by the exercise of the option, become reinvested in the vendor, the latter should not be liable for any of the obligations incurred by the vendee in connection with the business, but should repossess and hold the same free and discharged of any such indebtedness, and only the estate of the vendee should be liable for such obligations. As consideration, the vendee was to pay to the vendor $45 per week during the latter's lifetime but his estate was not to be liable for such payments if the business became reinvested in the vendor.

Following the execution of this agreement defendant cancelled his registration of the fictitious name "Audenried Service Stations" under which he had been conducting the business, and Cameron Reese filed a cer-

tificate registering this same name for his own use. Lehigh Valley Railroad Company made a new lease to Cameron Reese, who went into possession and carried on the business until his death, which occurred on December 12, 1941, whereupon defendant, exercising the option granted to him in that event by his agreement with his son, took over the business and has since been conducting it under a new lease in his own name which he obtained from Lehigh Valley Railroad Company.

The present controversy arises by reason of the fact that, during the period when Cameron Reese was the owner of the business, he borrowed, on January 5, 1939, from plaintiff, The First National Bank of McAdoo, the sum of $3,900, for which he gave his promissory note and at the same time executed in writing a so-called "bill of sale" wherein he recited that, in consideration of the loan, he granted and sold to the Bank a combination gasoline station and dwelling house on the leased premises, also a warehouse and sundry gasoline pumps and underground gasoline storage tanks. By another writing attached to this instrument the Bank agreed that upon the repayment of the loan and interest it would reconvey to Cameron all the buildings and chattels mentioned in the bill of sale. The Bank recorded these documents in the county Office for Recording of Deeds, but it did not take actual possession of the property. How much of the loan and interest still remains unpaid is not disclosed in the record of this case, but apparently some or all of it is still due and owing. In November, 1942, the Bank replevied the articles enumerated in the bill of sale and which were then in defendant's possession as a result of his having taken over the business upon his son's death.

The issue here involved is in regard to the relative rights of plaintiff and defendant in the chattels covered by the writ of replevin. The case was heard by the trial judge sitting, by agreement of counsel, without

a jury. Judgment was entered in favor of the defendant and against the plaintiff. The latter appeals.

Although physically annexed to the ground the replevied articles constitute personal property, having been erected for business purposes upon premises leased, first by defendant, and later by Cameron Reese. They are trade fixtures.[1] Such structures, placed by a tenant on demised premises for the purpose of carrying on his business, may be removed by him, or may be replevied or levied on by a writ of execution, during the term of the lease; being built on leased land and therefore on a chattel estate they are themselves chattels in regard not only to the lessor but to everyone else. The criterion is not one of physical annexation, for the rule is the same even though the fixtures consist of steel-framework buildings, buildings with a brick, stone or concrete foundation, furnaces, machinery, casings of gas and oil wells, or similar structures.[2]

The first question for determination is the extent of the rights secured to defendant under his agreement. That agreement imposed an obligation on his son not to sell or assign the *business,* that is, *the enterprise as an entirety,* the purpose of this provision being obviously to assure to defendant that the business would not be turned over to a stranger but would be con-

---

[1] The lessor, Lehigh Valley Railroad Company, was originally made a party defendant in this action, but filed a disclaimer of any right, title or interest of, in and to the replevied articles.

[2] *Lemar v. Miles,* 4 Watts 330; *Church v. Griffith,* 9 Pa. 117; *White's Appeal,* 10 Pa. 252; *Shell v. Haywood & Snyder,* 16 Pa. 523, 530; *Gaule v. Bilyeau,* 25 Pa. 521; *Heffner v. Lewis,* 73 Pa. 302, 310; *Kile, Sheriff, v. Giebner,* 114 Pa. 381, 386, 7 A. 154, 155; *Robinson v. Harrison,* 237 Pa. 613, 85 A. 879; *McClintock & Irvine Co. v. Aetna Explosives Co.,* 260 Pa. 191, 103 A. 622; *Stark v. Hight,* 3 Pa. Superior Ct. 516; *First National Bank of Pittston v. Monarch Fire Insurance Co. of Cleveland,* 123 Pa. Superior Ct. 298, 300, 187 A. 69, 70; 46 Am. Jur. 12, §15; see also *Copley v. Stewart, Secretary of Highways,* 14 D. & C. 733, 740, 741.

ducted by Cameron during the latter's entire lifetime, so that, if Cameron should prematurely die, he himself could reassume the ownership and conduct of the business. The prohibition was not directed against the sale or assignment of any particular or individual assets, whether goods, tools, apparatus or equipment; if Cameron had not met with such an early death he might normally have been expected to carry on the business for some 30 or 40 years, and it is quite impossible to believe that either the father or the son intended that Cameron was never, during any such possible period, to be allowed to replace or dispose of any of the fixtures or other assets, or, even if necessary, perhaps, in order to obtain money for the operation of the business, to pledge them for that purpose. Whether, if he made any such sale or pledge, but appropriated the proceeds to his own use instead of using them for the benefit of the business, defendant might have recourse against him under the terms of their agreement, is a question which does not enter into the determination of the present issue. Incidentally, it is to be noted that the articles conveyed by Cameron to the Bank are by no means all—in fact are but a comparatively small part—of those originally turned over to him by defendant, and, on the other hand, some of them had been acquired after that time.

As far as concerns the clause in the agreement that, if Cameron predeceased his father, the business might be reassumed by the latter at his option, this provision did not invest defendant with any reversionary title to, or property right in, any of the assets of the business. All that it gave him was an option once again to acquire, without the payment of any further consideration, the ownership of the business as it might then be; at that time there might be either more or less fixtures and other assets, or different fixtures and assets, than those which he had transferred to his son. He could recapture the business only in the condition in which Cameron, might

leave it and with the assets subject to whatever liens had meanwhile been imposed upon them, leaving him free to enforce Cameron's contractual obligations to him if those obligations had been violated. His rights under the agreement were exactly the same as those existing under a contract in which the seller reserves to himself an option to repurchase the goods or to retake such of them as shall remain unsold by the buyer, in which case the title to the merchandise passes to and remains in the buyer and does not revest in the seller until he shall have exercised his right of election, and therefore bona fide purchasers from the buyer, or pledgees of the goods, or creditors issuing an attachment thereon, prior to such election, acquire valid titles thereto. In short, defendant's rights were not in rem but contractual only, and could not affect any person who, like the plaintiff Bank, in good faith, and without knowledge of defendant's agreement with Cameron, dealt with the latter as the unrestricted owner of the business and its assets.

This brings us to the remaining question: What rights did plaintiff obtain under Cameron's so-called "bill of sale" of January 5, 1939, and the agreement accompanying it? Reading the two documents together, as they must be read, they constituted what in effect was a chattel mortgage of the articles therein enumerated. Had the Bank in some fashion or other taken possession of the pledged assets no question could have arisen as to the validity of its title. But defendant attacks that title on the ground that chattel mortgages unaccompanied by delivery of possession were void in Pennsylvania, prior to the Act of June 1, 1945, P. L. 1358, as to bona fide purchasers and execution creditors. Defendant, however, was not such a purchaser or creditor; he was merely an assignee of the business, and as such could acquire no rights greater than those of his assignor. While possession of the pledged property was not taken by the Bank the latter obtained at least

an equitable lien thereon which was valid as against the pledgor, and Cameron could convey to his father no title free of that lien. Even an assignee for the benefit of creditors does not gain the same rights in regard to mortgaged chattels remaining in the possession of the pledgor as those which execution creditors may assert: *Luckenbach v. Brickenstein*, 5 W. & S. 145; *Smith v. Equitable Trust Co. (No. 2)*, 215 Pa. 418, 64 A. 594.

There is another reason why defendant's attack on plaintiff's title cannot be sustained. Where, under a chattel mortgage, the property is of such a nature that its removal is impracticable, a pledge of it without transfer of possession is not necessarily invalidated even as against subsequent purchasers and execution creditors. In determining the sufficiency of the possession taken by the pledgee in any such case regard must be had to the character of the property, the nature and object of the transaction, the position of the parties, and the usages of the trade or business: *Luckenbach v. Brickenstein*, 5 W. & S. 145, 149; *Bismark Building & Loan Association v. Bolster*, 92 Pa. 123, 129; *Crawford v. Davis*, 99 Pa. 576; *Garretson v. Hackenberg*, 144 Pa. 107, 113, 22 A. 875, 876; *White v. Gunn*, 205 Pa. 229, 232, 54 A. 901, 902; *Northrop v. Finn Construction Co.*, 260 Pa. 15, 21, 103 A. 544, 546; *Bowersox v. Weigle & Myers*, 77 Pa. Superior Ct. 367, 370-372. In the present instance it is obvious that, because of their physical annexation to the land, delivery of the pledged assets would not have been feasible; the circumstances, therefore, justified Cameron's retention of the property and negatived any possible element of fraud. It is true that ordinarily, when delivery of possession cannot well be made, the pledgee should give such notice of the pledge as is reasonably possible in order that subsequent innocent purchasers or execution creditors may not be misled. Here the Bank did record the pledge agreement, but, as there was no legal provision for such recording, it necessarily failed

of its purpose. Not only, however, is it difficult to see what further means of notification the Bank could reasonably have adopted, but, in any event, notice was not required as far as defendant was concerned, for he gave no further consideration in taking over the business and was therefore not affected or harmed in any way by failure to receive such notice.

While, for the reasons stated, we are of opinion that the judgment must be reversed and the lien of the Bank declared valid as against defendant, plaintiff is entitled only to a conditional verdict under section 6 of the Replevin Act of April 19, 1901, P. L. 88, which provides that "If any party be found to have only a lien upon [the] goods and chattels, a conditional verdict may be entered, which the court shall enforce in accordance with equitable principles." Plaintiff's interest in the replevied articles is only as security for the collection of whatever amount remains due from Cameron Reese that is covered by the pledge, and, subject to the Bank's rights in that respect, defendant is entitled both to ownership and possession.

The judgment is reversed and here entered in favor of plaintiff and against defendant. The record is remitted with instructions to the court below (sitting, in accordance with the agreement of the parties, without a jury) to hear and determine the amount owing by Cameron Reese to plaintiff for which the pledged property is security. If plaintiff, within 30 days thereafter, receives payment of the amount thus determined, this judgment shall thereupon be satisfied of record. If plaintiff does not receive said payment within said period it shall promptly expose the replevied articles to public sale, and shall pay to defendant the excess, if any, of the proceeds therefrom over and above the amount thus determined, and, upon such sale being had, this judgment shall be satisfied of record. Costs to be divided equally between the parties.