## Weaver Shearer *v.* Levi Miller, Appellant.

*Wills—Vested estate—Alternative executory limitation.*

Testator by his will gave certain railroad stock to W., " provided the said W. at the time of my decease should yet be in his minority then said stocks so to him bequeathed shall be transferred unto M. in trust for said legatee until of age."   He also devised a tract of land to W. directing as follows: " All of which he shall have in possession on the first day of April ensuing the decease of my son J. . . . . . (reserving to the latter the rents, issues and profits during life). . . . Provided however should said devisee die without issue or descendants of such, then and in such case

said real estate and railroad stocks hereinbefore unto him bequeathed shall fall back and vest to my estate and then to be distributed as hereinafter directed. . . . And I further order and direct, should the real estate hereinbefore devised fall back and be vested to my estate by virtue of this my will, that he the said executor then shall as soon as conveniently can be done after the decease of my son J. sell and dispose of the same. . . . And as touching the rest and residue of my estate that may be or remain at the time of the decease of my said son J. or at any time thereafter I hereby order and direct to be paid unto the present creditors of my said son J. respectively in proportion to their respective remainders of claims . . . . and the same with any others bequeathed or devised estate that may fall back and revert to my estate by virtue of this my will." W. survived J. *Held*, (1) that W. took a fee in the real estate, with an alternative executory limitation, in case of his death before J., to his children, grandchildren, etc., if there be any surviving J., or if not, to the testator's executor for the purposes specified in the will; (2) that W.'s surviving J. rendered impossible the contingency upon which the executory limitation was to take effect, and his interest then became an indefeasible one in fee simple.

Argued Feb. 28, 1898. Appeal, No. 494, Jan. T., 1897, by defendant, from judgment of C. P. Berks County, Nov. T., 1897, No. 79, on case stated. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Case stated to determine title to real estate, which the plaintiff assuming to own in fee simple sold by contract to Levi Miller, the defendant, for the sum of $15,000. The plaintiff on November 11, 1897, executed a deed acknowledged to be in proper legal form. The property was clear of all incumbrances. The defendant, however, declined to pay the purchase money and accept the deed when tendered to him, upon the ground that, under the will of Peter Weaver, deceased, plaintiff had but a life interest in the real estate and not an estate in fee.

It was agreed between the parties that the facts should be embodied in the case stated, of the nature of an amicable action, to recover the amount of purchase money from the defendant.

The facts appear by the opinion of ENDLICH, J., which was as follows:

Peter Weaver died October 27, 1879, leaving a will, dated March 24, 1879, in which he provided as follows:

"1st.—I nominate, constitute and appoint . . . . Jeremiah Van Reed the executor of this my last will and testament . . . .

" 7th.—I give and bequeath unto Weaver Shearer . . . . 20 shares . . . . of my preferred stock of the Northern Pacific Railroad Company, provided the said Weaver Shearer at the time of my decease should yet be in his minority then said stocks so to him bequeathed shall be transferred unto Levi Miller . . . . in trust for said legatee until of age.

"13th.—I give and devise unto the said Weaver Shearer all that certain . . . . plantation . . . . whereon I now reside . . . . Together with 4 tracts of woodland . . . . All of which he shall have in possession on the first day of April ensuing the decease of my son Jeremiah . . . . (reserving to the latter the rents, issues and profits during life) . . . . Provided however should said devisee die without issue or descendants of such, then and in such case said real estate and Railroad stocks hereinbefore unto him bequeathed shall fall back and vest to my estate and then to be distributed as hereinafter directed.

" 15th.—I further order and direct, should the real estate hereinbefore devised fall back and be vested to my estate by virtue of this my will that he the said executor then shall as soon as conveniently can be done after the decease of my son Jeremiah sell and dispose of the same . . . .

" 18th.—And as touching the rest and residue of my estate that may be or remain at the time of the decease of my said son Jeremiah or at any time thereafter I hereby order and direct to be paid unto the present creditors of my said son Jeremiah respectively in proportion to their respective remainders of claims . . . . and the same with any others bequeathed or devised estate that may fall back and revert to my estate by virtue of this my will . . . ."

Testator's son Jeremiah died in 1885, and on the following April, Weaver Shearer went into possession of the realty above referred to. The single question to be determined upon this case stated is, whether plaintiff's interest in said realty is a fee-simple or not. The answer to that question must depend upon the proper construction of the proviso to paragraph 13, read in the light of the other portions of the will above quoted. So read, it cannot be successfully maintained that the language of this proviso imports a limitation over upon an indefinite failure of Weaver Shearer's issue. The direction that, upon the falling back of the property to the estate, it be sold by " the said exec-

utor " is inconsistent with the idea that the time of the reversion is designed to be postponed to an indefinite period : Middleswarth's Adm'r v. Blackmore, 74 Pa. 414. So is the direction that the proceeds of the sale of the reverted property go towards the satisfaction of Jeremiah's "present creditors : " Taylor v. Taylor, 63 Pa. 481. Besides, that sale is to be made about the time of Jeremiah's death. And again, the phrase " issue or descendants of such " is significant. If the word " issue " were used to denote an unbroken and indefinite succession, there would be no sense in adding " or descendants of such ; " for all would be covered by " issue." The addition of these words, which may mean " heirs," (Huston v. Read, 32 N. J. Eq. 591), and may mean " children," (Schmaunz v. Goss, 132 Mass. 141), would seem to indicate that Weaver Shearer's "issue " means simply his children, and that they were regarded as taking, if or when they should take, as a new stock, by way of substitution and as purchasers. But neither does the testator appear to contemplate a failure of issue at the death of Weaver Shearer. Certainly not a " death without issue " before the testator, within the rule in Mickley's App., 92 Pa. 514; Morrison v. Truby, 145 Pa. 540; Mitchell v. Ry. Co., 165 Pa. 645; Keating v. McAdoo, 180 Pa. 5, and similar cases ; for, in paragraph 7, he appoints a trustee for Weaver Shearer in case of his being under age at testator's decease— thus showing that he is providing for one whom he expects to survive his, testator's, death and that, when he speaks of Weaver Shearer's death, he has reference to a period subsequent to his own. This inference is greatly strengthened by the fact stated by counsel on both sides at the argument that at the time of making his will testator was about eighty years old, whilst Weaver Shearer was a child. It would seem nonsensical to suppose that, in these circumstances, the testator was contemplating a possibility that Weaver Shearer might have children and grandchildren, and that all of these persons might live and die before the will should be probated. Yet, though evidently thinking of Weaver Shearer's death as something subsequent to his own, there is that in this will which forbids the conclusion that the testator is speaking of a failure of Weaver Shearer's issue upon the latter's death at any time thereafter. The realty in question is subject to a life estate in

Jeremiah. It is upon Jeremiah's death that Weaver Shearer, if living, or his children, if he be dead, are to go into possession. It is upon Jeremiah's death, if at all, that the property is to be sold by the executor. In order to enable them to do so, it must have reverted before Jeremiah's death, i. e., Weaver Shearer must have died and his issue, etc., failed before Jeremiah died. If this be too literal a construction, still clearly, Jeremiah's death is the important epoch in the testator's entire scheme— the point of time to which he refers the ultimate disposition of his estate, and it seems most reasonable to assume that that is the period which was in his mind when he provided for the event of Weaver Shearer's death without issue, etc. The words, " or at any time thereafter," in paragraph 18, directing distribution among Jeremiah's creditors, refer to what may be found remaining of the testator's estate after Jeremiah's death, including, not the reverting realty itself (the time for the sale of which is fixed by paragraph 15), but only its proceeds, and have, therefore, no bearing upon the question as to when the period for its reversion is to be ascertained. Accordingly, the intention of the testator was that, subject to Jeremiah's life estate, the realty should upon testator's death vest in Weaver Shearer; that, in the event of the latter's surviving Jeremiah, it should continue his absolutely; that, in the event of his death before, and leaving children, grandchildren, etc., surviving Jeremiah, it was to be theirs; and that, in the event of his dying before Jeremiah, without leaving children, grandchildren, etc., surviving the latter, it should go to the executor as part of the estate. Words of inheritance not being essential in a devise in order to create a fee, Act of April 8, 1833, P. L. 249, sec. 9, the effect of the language in which this intention is sought to be expressed would seem to be to give Weaver Shearer a fee, with an alternative executory limitation, in case of his death before Jeremiah, to his children, grandchildren, etc., if there be any surviving Jeremiah, or, if not, to the testator's executor for the purposes specified in the will. Weaver Shearer's surviving Jeremiah rendered impossible the contingency upon which the executory limitation was to take effect, and his interest then became an indefeasible one in fee simple: Wentz's App., 106 Pa. 301; Drum v. Millar, 18 Pa. C. C. 318; Brightman v. Brightman, 100 Mass. 238.

And now, December 27, 1897, judgment upon the case stated is entered in favor of plaintiff, for $15,140.

*Error assigned* was in entering judgment for plaintiff on case stated.

———— *Rothermel*, with him *H. P. Keiser*, for appellant.—In giving construction to a will all the parts of it should be examined and compared, and the intention of the testator ascertained, not from a part alone, but from the whole instrument: Mutter's Est., 38 Pa. 314; Shreiner's App., 53 Pa. 106; Grove's Est., 58 Pa. 429.

In the construction of a will the court will put itself as far as possible in the position of the testator by taking into consideration the circumstances surrounding the testator at the time of the execution of the will.

Where a fee is given under one part of a will it may be reduced to a life estate in another part, if such be clearly the intention of the testator: Urich v. Merkel, 81 Pa. 332; Urich's App., 86 Pa. 386.

*J. H. Jacobs*, for appellee.—There are no arbitrary or unbending rules in the construction of the words of a will. No two wills are in all respects alike. Nevertheless, the cardinal canon still holds good that the intention of the testator of each will, separately, is to be gathered from its own four corners: Provenchere's App., 67 Pa. 466; Fahs v. Fahs, 6 Watts, 218.

The law favors the free, uncontrolled use and enjoyment of property and the power of alienation; whereas the defeasible quality of an interest tends most materially to abridge both: Smith on Executory Interest, 226.

The law presumes the first taker of an estate to be the favorite: McFarland's App., 37 Pa. 304; Smith's App., 23 Pa. 11; Still v. Spear, 45 Pa. 170.

The rule which sacrifices the former of several contradictory clauses is never applied but on failure of every attempt to give the whole such a construction as will render every part of it effective: Mutter's Est., 38 Pa. 321.

PER CURIAM, March 21, 1898:

On the facts set forth in the case stated, the learned judge of

the court below was clearly right in entering judgment in favor of the plaintiff for fifteen thousand one hundred and forty dollars ($15,140).

On his opinion the judgment is affirmed.