In re Michael G. STESLOW and Deborah A. Steslow, Debtors.

Michael G. STESLOW and Deborah A. Steslow, Plaintiffs,

v.

CITICORP MORTGAGE, INC. and Frederick L. Reigle, Defendants.

Bankruptcy No. 97–21252.
Adversary No. 97–2085.

United States Bankruptcy Court,
E.D. Pennsylvania,
Reading Division.

Oct. 19, 1998.

Dexter K. Case, Reading, PA, for Debtor.

Leon P. Haller, Reading, PA, for Citicorp Mortgage, Inc.

Frederick L. Reigle, Reading, PA, Trustee.

**MEMORANDUM OPINION** [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is an oral motion for partial summary judgment made by counsel for Citicorp Mortgage, Inc. (hereafter "Citicorp") at a telephonic status conference conducted on June 10, 1998. We ordered briefs which were filed. No request for argument has been forthcoming so we decide the matter on the briefs and the record.

Debtors filed this adversary seeking a determination of the extent and validity of Citicorp's first mortgage lien on their residence. They seek to bifurcate Citicorp's mortgage claim into secured and unsecured portions on the basis that Citicorp has taken a security interest in property in addition to real property that is Debtors' principal residence. 11 U.S.C. § 1322(b)(2). Citicorp contends that its mortgage is protected by 11 U.S.C. § 1322(b)(2) which provides that the rights of a holder of a secured claim secured only by a security interest in real property which is Debtors' principal residence cannot be modified. For the reasons which follow, we find that the mortgage conveys a security interest in property other than Debtors' primary residence and, therefore, the mortgage is modifiable.

■ The parties have stipulated that Citicorp holds the first mortgage on Debtors' residence and that the mortgage includes the following language:

> TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property....

Citicorp argues that its mortgage is no different from that involved in *Nobelman v. American Savings Bank,* 508 U.S. 324, 329,

113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and that rents constitute real property.

■ We first note that the Supreme Court did not discuss the particular items of security involved in the mortgage in *Nobelman.* The Court held only that the rights of a holder of a claim secured solely by an interest in the debtor's principal residence were not modifiable under § 1322(b)(2). Second, property interests are created and defined under state law. *Nobelman,* 508 U.S. at 329, 113 S.Ct. at 2110; *Butner v. U.S.,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Under Pennsylvania law, unaccrued rents are reversionary real property. *Marine National Bank v. Northwest Pennsylvania Bank & Trust Co.,* 308 Pa.Super. 154, 454 A.2d 67 (1982). This is consistent with Pennsylvania law that construes mortgages as conveyances of defeasible title to the real estate. *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34 (3d Cir.1993); *Warden v. Zanella,* 283 Pa.Super. 137, 423 A.2d 1026 (1980).

■ In *In re Wilkinson,* 189 B.R. 327, 329–30 (Bankr.E.D.Pa.1995), we examined Pennsylvania real property law which provides that a devise of "rents, issues and profits" passes title to the real estate. 189 B.R. at 329, citing *In re Carmany's Estate,* 357 Pa. 296, 302, 53 A.2d 731, 734 (1947). *See also Shearer v. Miller,* 185 Pa. 149, 39 A. 846 (1898)(conveyance of rents, issues and profits conveys right to lease land and cut and sell the wood). Further, real property includes tenements which include rents. *Wilkinson,* 189 B.R. at 329, citing *In re Reel's Estate,* 263 Pa. 248, 253, 106 A. 227, 229 (1919). *See also Peoples–Pittsburgh Trust Co. v. Henshaw,* 141 Pa.Super. 585, 15 A.2d 711, 714 (1940)(conveyance by mortgage carries as an incident of the reversion the right to rents in event of default). Furthermore, by statute a conveyance of land in Pennsylvania transfers the rents. 21 Pa. Stat. § 3.[2] It is clear that rents are real

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. The statute is entitled "Grantor's entire estate and rights conveyed" and provides that

"All deeds or instruments in writing for conveying or releasing land hereafter executed, granting or conveying lands, unless an exception or reservation be made therein, shall be construed to include all the estate, right, title, interest, property, claim, and demand whatso-

property in Pennsylvania by virtue of Pennsylvania law. Because property rights are created and defined under state law, *see Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110; *Butner*, 440 U.S. at 54–55, 99 S.Ct. at 918, the inclusion of a security interest in "rents" in a Pennsylvania mortgage does not constitute a security interest in property other than a debtor's principal residence. Accordingly, the mortgage cannot be bifurcated under 11 U.S.C. § 1322(b)(2) on the ground that it includes a security interest in rents.[3]

■ If the language cited above was the only portion of the mortgage before us, we would find that Citicorp has a security interest only in real property that is Debtors' primary residence. However, the mortgage also includes as additional security the tax and insurance escrow which consists of funds and is personalty. The mortgage directs the lender to apply the escrow "first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2 [i.e., to taxes and insurance]; fourth, to interest due; and last, to principal due." Mortgage

at ¶ 3, Exhibit A to Stipulation of Facts Between Debtor and Citicorp Mortgage, Inc.

■ In *Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 320 A.2d 117, (1974), the Pennsylvania Supreme Court explained the inception of lenders' practice of requiring debtors to deposit funds toward tax and insurance payments as follows:

In the 1930s substantial numbers of foreclosures were caused by inability to pay annual assessments. As a result of this, banks began requiring the monthly tax payments. The theory was that individual homeowners, especially small borrowers, would find it easier to make monthly payments of one-twelfth the yearly taxes, than to meet in a single payment the annual bill. The practice has continued ever since.

457 Pa. at 141, 320 A.2d at 121. Under the escrow system the lender establishes an account for the borrower which is credited when the borrower makes the required real estate tax and insurance payments and debited when the tax or insurance premium is paid by the bank to the appropriate entity.

---

ever, of the grantor or grantors, in law, equity, or otherwise howsoever, of, in, and to the same, and every part thereof, together with all and singular the improvements, ways, waters, watercourses, rights, liberties, privileges, hereditaments, and appurtenances whatsoever thereto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof."

3. The Supreme Court has held that state law determines the existence and extent of property rights. *See Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110; *Butner*, 440 U.S. at 54–55, 99 S.Ct. at 918. We are aware of the Order of the District Court in *Brown v. Citicorp Mortgage, Inc.*, Civil Action No. 96–401 (July 22, 1996)(unpublished), reversing our decision in *In re Brown*, 189 B.R. 3 (Bankr.E.D.Pa.1995). In its order, the District Court cited *Sapos v. Provident Inst. of Sav. in Town of Boston*, 967 F.2d 918 (3d Cir.1992), for the proposition that "rents and profits" are personalty. An analysis of *Sapos*, however, shows that the Court of Appeals did not single out rents or rents and profits as an example of additional security that would take the mortgage out of the protection of § 1322(b)(2). The collateral in the mortgage at issue therein included " 'the following described household appliances, which are, and shall be deemed to be fixtures and a part of the realty, and are a portion of the security for the indebtedness herein mentioned, namely, wall to wall carpeting [ ]' .... In addition, the mort-

gage was secured by rents, profits and appliances." 967 F.2d at 922. Because the *Sapos* mortgage included appliances, which are personalty, it was wholly unnecessary for the Court of Appeals to examine Pennsylvania law with respect to the definition of "real property". Thus, we read *Sapos* as simply reiterating the general principle that the rights of any creditor whose claim is secured by something in addition to or other than the real property which is the debtor's principal residence are not protected by the anti-modification provision of § 1322(b)(2). Furthermore, *In re Hammond*, 27 F.3d 52 (3d Cir.1994), and *Wilson v. Commonwealth Mortgage Corporation*, 895 F.2d 123 (3d Cir.1990), the other Third Circuit cases examining § 1322(b)(2), do not examine the particulars of Pennsylvania real property law, nor do they define "rents" in a way contrary to the state law definition. In both *Wilson* and *Hammond* the mortgages included furniture, machinery and equipment—all clearly personalty. Thus, in those cases it also was not necessary for the court to delve into Pennsylvania state law with respect to the definition of "real property". The view expressed in this Memorandum Opinion is a way to reconcile Third Circuit precedent and the dictates of the Supreme Court. Accordingly, we must conclude that in Pennsylvania rents are an incident of real property.

*Id.* When the property is sold, excess escrow funds are either applied to any outstanding balance on the mortgage or are refunded to the mortgagor. By no stretch of the imagination can these funds be considered "real property". They are personalty required and held by the lender to ensure that the mortgagee's interest is not put at risk should the mortgagor fail to pay required real estate taxes or maintain insurance.[4] Black's Law Dictionary 1153 (6th Ed.1990).

In *In re Crystian (Mellon Bank, N.A. v. Crystian)*, 197 B.R. 803 (Bankr.W.D.Pa. 1996), we held that, based on *In re Hammond*, 27 F.3d 52 (3d Cir.1994), *Sapos v. Provident Institution of Savings*, 967 F.2d 918 (3d Cir.1992), and *Wilson v. Commonwealth Mortgage Corporation*, 895 F.2d 123 (3d Cir.1990), the escrow taken as additional security took the mortgage out of the protection of § 1322(b)(2). In dicta in *Hammond* the Court of Appeals said

> creditors who demand additional security interests in personalty or escrow accounts and the like pay a price. Their claims become subject to modification. Their recourse, if they wish to avoid modification, is to forego the additional security.

27 F.3d at 57. Further,

> *Nobelman* did expressly overrule the holding in *Wilson* and *Sapos* that section 1322(b)(2) does not preclude a debtor from modifying the undersecured portion of a mortgage ....

The Supreme Court's opinion in *Nobelman*, however, did not expressly address our alternate rationale .... we also held that a mortgagee who has an additional security interest in property other than the real estate which is the mortgagors' primary residence cannot claim any benefit from section 1322(b)(2)'s antimodification provision and therefore such a mortgagee's claim can be bifurcated under section 506(a) .... the Supreme Court's failure to address the effect of the additional security interest in the *Nobelman* mortgage does not imply that the Supreme Court held section 1322(b)(2) prohibits bifurcation of residential mortgages that also give the mortgagee a lien on personal property used in or about the residence.... we conclude that a mortgage which creates security interests in a debtor's personal property in addition to a lien on the mortgagor's principal residence takes the mortgage beyond the protection of the antimodification clause of section 1322(b)(2) of the Bankruptcy Code and permits bifurcation of the mortgage into secured and unsecured components under section 506(a).

*Id.* at 55–57. Accordingly, the Court of Appeals let stand the district and bankruptcy courts' decision that the mortgagee's allowed secured claim was limited to the fair market value of the residence.

 Based on the inclusion of a pledge conveying a security interest in the escrow in the mortgage involved in the matter before us, we find that the mortgage is modifiable. However, the parties disagree on the fair market value. Debtors contend that it is $75,000. Citicorp asserts that it is $125,000. On the date the bankruptcy was filed Citicorp was owed $107,240.58. Accordingly, an evidentiary hearing must be held.[5]

---

**4.** With respect to insurance, it is important to distinguish between premiums paid into escrow in which a lender takes a security interest and a covenant in the mortgage requiring that the mortgagor maintain hazard insurance, the proceeds of which inure to the benefit of the lender. First, a covenant without a pledge granting additional security is simply a promise, not a security interest. A covenant is defined as

> [a]n agreement, convention, or promise of two or more parties, by deed in writing, signed, and delivered, by which either of the parties pledges himself to the other that something is either done, or shall be done, or shall not be done, or stipulates for the truth of certain facts.

BLACK'S LAW DICTIONARY 363 (6th ed.1990). A pledge is "[a] ... deposit of personal property ... as security". Second, hazard insurance is "an essential protection of the underlying collateral and not ... *additional* collateral". *In re Davis*, 989 F.2d 208, 212 (6th Cir.1993)(emphasis in original). *See also Matter of Washington*, 967 F.2d 173 (5th Cir.1992). Therefore, while the *proceeds* of a hazard insurance policy are a substitute for the original collateral, the *premiums* used to pay for the policy are not.

**5.** The mortgage also includes "fixtures". Fixtures can be either personalty or real property under state law. *See, e.g., Smith v. Weaver*, 445 Pa.Super. 461, 665 A.2d 1215 (1995),

Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvement, and not peculiarly fitted to the property with which they are used; these always remain personalty. Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty .... Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable.

445 Pa.Super. at 467, 665 A.2d at 1218, citing *Royal Store Fixture Co. v. Patten,* 183 Pa.Super. 249, 252–53, 130 A.2d 271, 273 (1957). Because fixtures can be realty as well as personalty, it is possible that mortgages containing references to "fixtures" are modifiable absent proof that the "fixtures" referred to in the mortgage constitute realty. *See In re Barto Technical Services, Inc.,* 181 B.R. 246 (Bankr.W.D.Pa.1995), *citing Noll v. Harrisburg Area YMCA,* 537 Pa. 274, 287, 643 A.2d 81, 87–88 (1994)(the parties' objective intent determines whether item is a fixture when third parties' rights will be affected by the determination).