**In re Robert J. STEWART and Lisa J. Stewart, Debtors.**

**Robert J. Stewart and Lisa J. Stewart, Plaintiffs,**

**v.**

**U.S. Bank, Defendant.**

**Bankruptcy No. 00–20770–JKF.**

**Adversary No. 00–2217–JKF.**

United States Bankruptcy Court, W.D. Pennsylvania.

June 27, 2001.

Francis E. Corbett, Pittsburgh, PA, for Debtors/Plaintiffs.

Charles F. Bennett, Pittsburgh, PA, for U.S. Bank.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

Before the Court are Cross Motions for Summary Judgment on the issues of

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

whether or not a partially secured second mortgage is modifiable under 11 U.S.C. § 1322(b)(2); whether it can be "stripped down" to the difference between the value of the residence and the amount owed to superior encumbrances at the time of filing; and whether a security interest in an escrow for taxes and insurance premiums, recited in the second mortgage instrument, creates security additional to that held in the residential realty itself, the effect of which disallows the second mortgage holder the protection of the antimodification clause of § 1322(b)(2).

■ Joint Debtors Robert and Lisa Stewart, Plaintiffs in this adversary action, are indebted to Defendant U.S. Bank (the Bank) through a second mortgage. Debtors argue that, as a matter of law, the antimodification clause of § 1322(b)(2) does not apply to them because the Bank has an additional security interest through a pledge in the form of an escrow for taxes, assessments, insurance premiums and ground rents as recited in the Bank's mortgage instrument. Debtors assert the right, under § 506, to "cram down" the value of the secured claim and then to "strip down" the second mortgage lien to the equity left in the property after subtracting the outstanding balance on the first mortgage from the value of the residence. Debtors and U.S. Bank have stipulated that the payoff balance on the first mortgage to Bell Federal was $52,509.00 and on the second mortgage to U.S. Bank was $54,278.52 as of February 4, 2000. We will value the asset as of the date of filing of the Chapter 13 petition.[2] *In re Taras*, 136 B.R. 941 (Bankr.E.D.Pa.1992). Payments on the first mortgage since the Chapter 13 commenced would not impair the second mortgage.

U.S. Bank argues, as a matter of law, that its status as a partially secured mortgagee places it under the protection of the holding of *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), which determined that the rights of a creditor holding a claim that is partially secured by value in residential realty may not be bifurcated in a Chapter 13 case. Bank argues that *Nobelman* should control rather than *In re McDonald*, 205 F.3d 606 (3d Cir.), *cert. denied*, 531 U.S. 822, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000), which determined that the lien of a wholly unsecured second encumbrance may be stripped off. The Bank further argues that it should be afforded the protection of the antimodification clause of § 1322(b)(2), asserting that it holds "a claim secured only by a security interest in real property that is the debtor's principal residence" because the provision in its mortgage which grants it security through a pledge[3] of taxes, assessments, insurance premiums and ground rents to be held in escrow is not perfected[4] against particular deposits, and, therefore, is meaningless. The Bank comes to this conclusion because of a provision in the mortgage, at the end of the first paragraph of Part 2 (Funds for Taxes and Insurance) of UNIFORM COVE-

---

**2.** The original petition was filed on February 4, 2000, as a Chapter 7. Debtors filed a voluntary conversion to Chapter 13 on April 13, 2000. Their plan was filed on May 31, 2001.

**3.** The last sentence of the second paragraph of part 2 (Funds for Taxes and Insurance) of U.S. Bank's mortgage instrument reads: "The Funds are pledged as additional security for the sums secured by this Mortgage."

**4.** Nothing in § 1322(b)(2) requires perfection or attachment of the security interest. *See In re Larios*, 259 B.R. 675, 678 (Bankr.N.D.Ill. 2001) ("[a]lthough § 101(51) states that there must be an agreement purporting to create a lien, it does not state that the lien must be enforceable").

NANTS, which reads "Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender." Exhibit B to Stipulation of Facts. It is undisputed that tax and insurance premium payments have been made, to date, only to the first mortgage holder, Bell Federal Savings, pursuant to an escrow clause in Bell's mortgage document, and it is also undisputed that Bell is an institutional lender. The Bank argues, therefore, that it can take advantage of the antimodification clause of § 1322(b)(2) and that its mortgage cannot be "crammed down" under *Nobelman*. However, Part 3 of the mortgage (Application of Payments) also directs the application of the escrow as follows: "first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof [Part 2, Funds for Taxes and Insurance], then to interest payable on the Note, and then to the principal of the Note." Thus, should the Bank ever receive funds toward this escrow, it will have both a perfected security interest in personalty and a right to apply proceeds toward obligations under the mortgage.

The relevant facts are these (references are to the Stipulation of Facts signed by counsel for both parties unless otherwise annotated):

7/28/95  Debtors signed a first mortgage on their residential realty in favor of Bell Federal Savings (¶ 3)

12/10/98  Debtors signed a second mortgage in favor of U.S. Bank (¶ 5)

2/4/00  Debtor filed chapter 7 at which time Bell Federal mortgage balance was $52,509.00 and U.S. Bank mortgage balance was $54,278.52 (¶¶ 1,3,5)

3/21/00  an appraisal of realty attributes a value of $77,000.00 to the residence

(Exhibit A to Plaintiffs' Complaint to Determine Secured Status)

U.S. Bank has not stipulated to the appraised value of the property; however, the parties agree that the second mortgage is partially secured and the exact value is not material to the pending motions.

*Nobelman* explains that the starting point for looking at how § 506 and § 1322(b)(2) can be read together is valuation:

Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim. It was permissible for petitioners to seek a valuation in proposing their Chapter 13 plan, since § 506(a) states that "[s]uch value shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest."

*Nobelman*, 508 U.S. at 328–329, 113 S.Ct. 2106.

Using that approach in this case establishes U.S. Bank's second mortgage to be partially secured. *In re McDonald*, 205 F.3d 606 (3d Cir.), *cert. denied*, 531 U.S. 822, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000), held that a wholly unsecured second mortgage could be "stripped off." *See also In re Bartee*, 212 F.3d 277 (5th Cir.2000), rehearing en banc denied 228 F.3d 411 (5th Cir.2000); *In re Tanner*, 217 F.3d 1357 (11th Cir.2000); and *In re Mann*, 249 B.R. 831 (1st Cir. BAP 2000). *McDonald* also ruled that a mortgage secured by even a dollar in equity cannot be stripped off. The Bank's mortgage is not wholly unsecured, and the Third Circuit's opinion in *McDonald* applies. Because there is at least one dollar of equity to support U.S. Bank's mortgage, it cannot be stripped off. The question then becomes whether the mortgage is modifiable.

■ This court, in *In re Steslow*, 225 B.R. 883 (Bankr.E.D.Pa.1998), citing *dicta* from *In re Hammond*, 27 F.3d 52 (3d Cir.1994) (*rehearing denied*), analyzed Pennsylvania law which deems the pledge of the escrow of taxes and insurance to be personalty and, therefore, constitutes a security interest in something other than one in real property that is the debtor's principal residence. We find that under Pennsylvania law this pledge is sufficient to convey a security interest, although that interest would not attach to specific funds until the Debtors delivered money into the escrow.

In *Royal Bank of Pennsylvania v. Selig*, 434 Pa.Super. 537, 644 A.2d 741 (1994), *appeal denied*, 540 Pa. 584, 655 A.2d 516 (1995), a judgment creditor attached the account of a depositor, which account was held at a bank and contained securities. The bank moved to dismiss the writ of attachment. In ruling that the bank had rights superior to those of the judgment creditor, the Pennsylvania Superior Court discussed security interests and pledges:

> The possession necessary for perfection of a security interest [in funds in the possession or control of another creditor] is akin to that required for a pledge. *Funding Sys. Asset Management Corp. v. Chemical Business Credit Corp.*, 111 B.R. 500, 516 (Bankr.W.D.Pa. 1990)[sic].... For a pledge to exist, "[t]he pledgor must relinquish possession of the property and unequivocally deliver it to the pledgee in such a way that the pledgee has absolute dominion and control over the property so as to absolutely deprive the pledgor of any control over it."

*Royal Bank of Pennsylvania v. Selig*, 644 A.2d at 746. We interpret the language "[f]or a pledge to exist" in the context of *Selig* to mean "for an *enforceable* pledge to exist." "Pledge" is defined in Webster's II New Riverside University Dictionary 903 (1989) as "a formal promise to do or not to do something;" "something given or held as security to guarantee payment of a debt or fulfillment of an obligation". In the matter before us the pledge is a promise and no escrow payments need be made to U.S. Bank at this time. Once Debtors actually make a payment for taxes and insurance to this mortgage holder, Debtors will have "delivered" and relinquished any control over the "Funds". At that point security will have been given for the pledge and perfection occurs. Nothing more than delivery of funds into the escrow is needed in this case to "perfect" U.S. Bank's interest. However, § 1322 does not require the interest to be perfected. It merely requires the Bank to *have* an interest secured by something other than real property that is the Debtor's principal residence. *See In re Larios*, 259 B.R. 675 (Bankr.N.D.Ill.2001). This the Bank acquired when it demanded the pledge in its form mortgage and Debtors conveyed the pledge by signing the document. The reason for the perfection upon delivery rule, expressed in *Funding Systems*, is

> ...to prevent the pledgor from misleading a potential subsequent lender into believing that he is free to pledge that same property again....

*In re Funding Systems Asset Management Corp.*, 111 B.R. 500, 517 (Bankr. W.D.Pa.1990). In the instant case, there is no potential for misleading any subsequent lenders with regard to these funds. If money is ever deposited into the escrow, those funds could not be pledged to anyone else as they would be in the exclusive possession and control of U.S. Bank pursuant to its mortgage.

As further support for our finding that the pledge conveyed a security interest separate from the realty within the mean-

ing of § 1322, although no delivery of funds has yet occurred, we refer to *First National Bank of McAdoo v. Reese*, 356 Pa. 175, 51 A.2d 806 (1947). The Pennsylvania Supreme Court therein, after ruling that trade fixtures were personalty, held that a pledge of such trade fixtures, although undelivered and recorded only with the mortgage, was nonetheless superior to a reversionary interest recited in the mortgage. In so holding, the court said

> While possession of the pledged property was not taken by the Bank the latter obtained at least an equitable lien thereon which was valid as against the pledgor. . . .

*First National Bank of McAdoo v. Reese*, 51 A.2d at 809.

An additional security interest in something other than the debtor's principal residence makes the antimodification clause of § 1322(b)(2) inapplicable:

> [C]reditors who demand additional security interests in personalty or escrow accounts and the like pay a price. Their claims become subject to modification.

*Steslow*, 225 B.R. at 886, quoting *Hammond*, 27 F.3d at 57. The mortgage held by the Bank in this case contains, at the end of the second paragraph of part 2 under "UNIFORM COVENANTS," the following: "The Funds [escrowed for taxes and insurance premiums] are pledged as additional security for the sums secured by this Mortgage." (Exhibit B, Stipulation of Facts.) The *Hammond* and *Steslow* debtors were permitted to bifurcate the outstanding mortgage into secured and unsecured parts.

Based upon *Hammond*, Judge Scholl held in *In re Reed*, 247 B.R. 618 (Bankr. E.D.Pa.2000), that a first mortgage holder who also had a security clause covering taxes and insurance premiums, had "additional security" and, therefore, could not claim the antimodification protection of § 1322(b)(2). The Bank asserts that the only security it has for the second mortgage is the realty itself since, despite the UNIFORM COVENANTS language conveying a pledge to the Bank of funds held in escrow, no funds for taxes and insurance premiums have actually been paid to it as second mortgagee. Rather, Debtors have been making those payments to the first mortgagee. The Bank argues that the following limitation on payments of such Funds negates the secured nature of the pledge: "Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender." (Exhibit B, Stipulated Facts, ¶ 2 of UNIFORM COVENANTS.) This contention is without merit inasmuch as § 1322 does not require attachment or delivery. It requires merely that the Bank have a security interest secured only against Debtors' residential real estate. U.S. Bank has more in this case.

*Hammond*, 27 F.3d at 56, quoting the underlying security document at issue therein and a similar one in *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d Cir.1990), ruled that a first mortgage plus a security interest in personal property in "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises" took the secured claim outside the antimodification clause of § 1322 and therefore permitted modification downward to coincide with the value of the property. *Steslow* ruled that a first mortgage plus a security interest in personal property (an escrow account for taxes and insurance premiums) could be bifurcated and "stripped down." *Nobelman* dealt with a partially secured first mortgage

which was the only security for the asset to which it attached. We find the distinctions between this case and *Hammond* and *Steslow* to be inconsequential. The *Hammond* court comments about *Nobelman:*

> ... [T]he Supreme Court's failure to address the effect of the additional security interest in the Nobelman mortgage does not imply that the Supreme Court held section 1322(b)(2) prohibits bifurcation of residential mortgages that also give the mortgagee a lien on personal property used in or about the residence. We conclude that *Nobelman* does not overrule our holding ... that a mortgagee who wishes to avoid bifurcation of its claim on a residential mortgage must limit its lien to the real estate.

*Hammond,* 27 F.3d at 57.

Because the Bank has additional security, the antimodification clause of § 1322(b)(2) does not apply and Debtors may invoke § 506 to bifurcate the second mortgage held by Bank.

Our ruling is not inconsistent with the policy reasons expressed in *In re Lam,* 211 B.R. 36 (9th Cir. BAP 1997), *appeal dismissed,* 192 F.3d 1309 (9th Cir.1999), and its analysis of Justice Stevens' concurring opinion in *Nobelman:* "[B]ecause second mortgagees are not in the business of lending money for home purchases, the same policy reasons for protection of first mortgagees under section 1322(b)(2) do not exist for second mortgagees." *In re Lam,* 211 B.R. at 41.

An appropriate order will be entered.

## JUDGMENT ORDER

**AND NOW,** this **27th** day of **June, 2001,** for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that the Motion for Summary Judgment of Defendant/U.S.Bank is **DENIED** and that the Cross–Motion for Summary Judgment of Plaintiffs/Debtors is **GRANTED.** Judg-

ment is entered in favor of Plaintiffs Robert J. Stewart and Lisa J. Stewart, and against Defendant U.S. Bank. The mortgage held by U.S. Bank is subject to modification and is not protected by 11 U.S.C. § 1322(b)(2), inasmuch as U.S. Bank's claim is secured by collateral in addition to the real estate used by Debtors as their principal residence.

**IT IS FURTHER ORDERED** that because the parties have not agreed upon the value of the residence, U.S. Bank may obtain an appraisal within 30 days hereof. A stipulation and proposed order fixing the value shall be filed not later than 45 days hereof. If no stipulation is filed, a pretrial and status conference to discuss dates for trial as to value will be held on **August 23, 2001,** at **1:30 p.m.** in Courtroom A, 54th Floor USX Tower, 600 Grant Street, Pittsburgh, PA. Once value is determined, the court will determine the allowed secured claim of U.S. Bank.

This Adversary remains **OPEN** pending further Order.