**In re Brenda Joyce Squire BROWN, Debtor.**

**Brenda Joyce Squire Brown, Plaintiff,**

**v.**

**Master Financial, Inc. and UMLIC VP, LLC, Defendants.**

**Bankruptcy No. 03–6145–3F3.**
**Adversary No. 03–268.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 3, 2004.

Bryan K. Mickler, Jacksonville, FL, for Plaintiff.

David E. Hicks, Tallahassee, FL, for Master Financial, Inc.

### *ORDER GRANTING MASTER FINANCIAL, INC.'S MOTION TO DISMISS*

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding came before the Court upon Motion to Dismiss filed by Defendant Master Financial, Inc., ("Master"), Plaintiff's Memorandum of Law in Opposition thereto, and Master's Supplemental Memorandum of Law. Plaintiff filed a complaint pursuant to 11 U.S.C. § 506(a) to value collateral and to determine the status of Defendants' Claims against Plaintiff.

The pertinent allegations of the complaint are as follows: Plaintiff purchased her homestead property in August of 1994. On February 20, 1997 Plaintiff entered into a second mortgage transaction with Master. Master loaned Plaintiff the principal sum of $35,000.00 to be secured by a second mortgage on Plaintiff's homestead, a potential escrow account, and an assignment of rents. The Master Mortgage contained the following provisions:

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelth of the yearly taxes and assessments... yearly premium installments for hazard insurance... yearly premium installments for mortgage insurance.

If Borrower pays Funds to Lender, the Funds shall beheld in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency...*The Funds are pledged as additional security for the sum secured by this Mortgage.* (Emphasis added).

3. **Application of Payments**. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to principle of the Note.

19. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of

the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Master never established an escrow account for Plaintiff.

On February 26, 1998 Plaintiff entered into a third mortgage transaction with Umlic VP LLC ("Umlic"). Umlic loaned Plaintiff the principal sum of $35,000.00 to be secured by a third mortgage on Plaintiff's homestead.

The replacement value of the property was recently set by the Clay County Property Appraiser at $72,917.00. As of the date of the filing of Plaintiff's bankruptcy petition, there remained a sum due in excess of $65,349.73 on the first mortgage loan on Plaintiff's homestead property.

Plaintiff asserts that pursuant to 11 U.S.C. § 506(a) the Master mortgage should be valued at the replacement value of $7,567.27. Plaintiff contends that the third mortgage lien is wholly unsecured and is subject to removal and treatment as an unsecured claim in Plaintiff's Chapter 13 plan. The Court entered a Default Judgment against Umlic as a result of its failure to file an answer or responsive pleading within the time prescribed by law.

Master seeks dismissal of the complaint for failure to state a claim upon which relief can be granted. Master asserts that 11 U.S.C. § 1322(b)(2) does not permit Plaintiff to modify Master's rights.[1] Section 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured **only** by a security interest in real property

that is the debtor's principal residence." (Emphasis added). Plaintiff asserts that Master's claim is secured by Plaintiff's principal residence as well as an unperfected security interest in an escrow for taxes and insurance and an assignment of rents. Plaintiff contends that the escrow and rent covenants remove the Master mortgage from the protection of 11 U.S.C. § 1322(b)(2).

"[D]ebtors seeking lien avoidance have aggressively sought to escape the anti-modification clause by claiming that their mortgages include security interests in personal property in addition to real estate. This litigation, taking place against the backdrop of a vaguely drafted statute, the need to balance the competing policy interests of debtors and creditors, and the highly technical nature of real estate finance law, has produced a body of case law that is in irreconcilable conflict." *Rodriguez v. Mellon Bank, N.A.*, 218 B.R. 764, 773 (Bankr.E.D.Pa.1998) citing *PNC Mortgage Company v. Dicks*, 199 B.R. 674, 682 (N.D.Ind.1996). The Court first turns to the escrow account provision in the Master mortgage.

### Escrow Account

Plaintiff argues that a security interest in an escrow account for taxes and insurance is a security interest in personalty sufficient to remove a mortgage from § 1322(b)(2)'s protection from modification. Defendant asserts that the "boilerplate" language in the Master mortgage has no independent value beyond maintenance of Plaintiff's residential real estate and thus does not remove the mortgage from the anti-modification protection of § 1322(b)(2).

Although no circuit court of appeals has addressed the issue of whether a security

---

[1] Ordinarily, Master's objection would be handled as an objection to confirmation. However, the Court will handle the issue in the context of this adversary proceeding.

interest in an escrow account for taxes and insurance forfeits the protection from modification in § 1322(b)(2), the majority of bankruptcy courts have held that it does. *See Donadio v. Countrywide Home Loans, Inc. (In re Donadio)*, 269 B.R. 336 (Bankr.M.D.Pa.2001); *Stewart v. U.S. Bank (In re Stewart)*, 263 B.R. 728 (Bankr.W.D.Pa.2001); *Reed v. Norwest Mortgage, Inc., (In re Reed)*, 247 B.R. 618, 623 (Bankr.E.D.Pa.2000); *Lewandowski v. U.S. Dep't of Hous. & Urban Dev. (In re Lewandowski)*, 219 B.R. 99, 101 (Bankr. W.D.Pa.1998); *In re Pinto*, 191 B.R. 610 (Bankr.D.N.J.1996); *Dent v. Associates Equity Services Co., Inc., (In re Dent)*, 130 B.R. 623, 628 (Bankr.S.D.Ga.1991); *But see In re Rosen*, 208 B.R. 345, 351 (D.N.J.1997); *Rodriguez v. Mellon Bank, N.A.*, 218 B.R. 764, 773 (Bankr.E.D.Pa. 1998); *In re Libby*, 200 B.R. 562, 567 (Bankr.D.N.J.1996). Master urges the Court to adopt the approach set forth in *Rodriguez*. There the court adopted a "holistic" view of what constitutes a security interest in residential real property within the meaning of § 1322(b)(2). The court noted that it would not automatically exclude a mortgage which contains a security in personal property from [§ 1322's] protection when the property has no independent value beyond the collateral's maintenance and protection. The court stated that it would "evaluate the nexus between the real estate and the 'additional collateral' and determine whether a separate classification is justified based on the relationship between the two, taking into account the Congressional policy to provide extra protection to the rights of home mortgage lenders." *Id.* at 776. The court acknowledged that escrow funds in which the mortgagee had a security interest were personal property but held that as a matter of federal bankruptcy law they were not "separate" from the real estate within the meaning of § 1322(b)(2). "The escrow funds, however much they might be, are certain to have negligible independent value in comparison to the real estate and are held for the purpose of protecting Mellon's mortgage. Escrow accounts are, moreover, a typical feature in every home mortgage, and to hold that their existence removes a mortgage from the anti-modification clause emasculates the statute. The Court cannot comprehend that Congress intended such a result." *Id.* at 777.

■ The Court declines to adopt the approach espoused by *Rodriguez*. The Court agrees with the reasoning set forth by the Sixth Circuit Court of Appeals in *Allied Credit Corp. v. Davis (In re Davis)*, 989 F.2d 208 (6th Cir.1993). There the court noted that a creditor's security interest in an item which is inextricably bound to the real property itself as part of the possessory bundle of rights does not remove the creditor from the class protected by § 1322(b)(2) as a creditor whose claim is secured only by a security interest in real property that is the debtor's principal residence. *Id.* at 213.[2] Although its purpose is to protect and preserve a mortgagee's interest in the real estate, an escrow account is clearly not an item which is inextricably bound to the real property itself as part of the possessory bundle of rights. *See Dent v. Associates Equity Services Co., Inc., (In re Dent)*, 130 B.R. 623, 628 (Bankr.S.D.Ga.1991)("[An] escrow account is not an incorporeal hereditament which is part of the possessory bundle of rights known as seizin in property. Escrow payments are cash payments by a

2. Although the case dealt with a mortgage requiring the debtor to obtain hazard insurance and granting the mortgagee a security interest in "the Hereditaments and Appurte-nances, rents, royalties, profits, and fixtures" rather than an escrow account, the Court finds the reasoning persuasive.

debtor to the lender and retained by the lender for the purpose of paying taxes and insurance. While the obligation to pay taxes may exist from the ownership of real property, it is not a possessory right. The obligation to maintain property insurance is a covenant contained in the deed to secure debt and is a contractual obligation between the debtor and the lender. The cash escrow payments are separate and distinct from the real property.") The Court concludes that a mortgagee who has a security interest in an escrow account for taxes and insurance forfeits the protection from modification in § 1322(b)(2). The Court turns to the issue of whether Master has a security interest in an escrow account.

■ Section 679.2031 of the Florida Statutes sets forth the process by which a security interest in personal property is created and provides as follows:

**679.2031. Attachment and enforceability of security interest; proceeds; supporting obligations; formal requisites**

(1) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

(2) Except as otherwise provided in subsections (3) through (10), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

(a) Value has been given;

(b) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(c) One of the following conditions is met:

4. The collateral is deposit accounts [3], electronic chattel paper, investment property, or letter-of-credit rights, and the secured party has control under s. 679.1041, s. 679.1051, s. 679.1061, or s. 679.1071 pursuant to the debtor's security agreement.

Section 679.1041 defines control of a deposit account.

**679.1041. Control of deposit account**

(1) A secured party has control of a deposit account if:

(a) The secured party is the bank with which the deposit account is maintained;

(b) The debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or

(c) The secured party becomes the bank's customer with respect to the deposit account.

Plaintiff concedes that the delivery of funds into an escrow account would be required to perfect Master's security interest but argues that her pledge of the funds in the [potential] escrow account was sufficient to create a security interest therein. Plaintiff contends that whether she actually paid money into an escrow account with Master is irrelevant as to whether the escrow account is additional security.

Plaintiff contends that Master gave value when it agreed to pay the taxes and insurance in exchange for Plaintiff turning over the escrow funds. Plaintiff also points out that she would have rights in the escrow account since she was to initially pay the money to Master to pay taxes and insurance on the property and was to

---

**3.** An escrow account is a deposit account.

receive a refund in the event there were excess funds or if she sold the property. Finally, Plaintiff asserts that the escrow account would be a deposit account which was controlled by Master. Plaintiff points out that Master: 1) would be expected to hold the funds in a depository institution pursuant to Paragraph 2 of the mortgage, 2) would have control over the disposition of the funds to pay taxes and insurance at the appropriate time, and 3) would be the customer of the bank pursuant to § 679.1041 since it would have established the escrow account.

Plaintiff points to the case of *Stewart v. U.S. Bank (In re Stewart)*, 263 B.R. 728 (Bankr.W.D.Pa.2001) which addressed the exact issue before the Court. There the court held that a second mortgage which contained a pledge of an escrow account for taxes and insurance was not protected from modification by § 1322(b)(2) despite the fact that no payments were made to the second mortgagee to fund the escrow account. The court noted that it considered the pledge [of the potential escrow] "sufficient to convey a security interest, although that interest would not attach to specific funds until the Debtors delivered money into the escrow... Nothing more than delivery of funds into the escrow is needed in this case to 'perfect' U.S. Bank's interest. However, § 1322 does not require the interest to be perfected. It merely requires the Bank to have an interest secured by something other than the real property that is the Debtor's principal residence. (citation omitted). This the Bank acquired when it demanded the pledge in its form mortgage and Debtors conveyed the pledge by signing the document." *Id.* at 731.

"The term 'attach' is used in Article 9 to describe the point at which property becomes subject to a security interest. As a nontechnical matter, a security interest might be said to attach when the secured party and the debtor do something that has the effect of giving a security interest to the secured party." *47 Fla. Jur 2d Secured Transactions § 177*. In other words, the creation and attachment of a security interest are one and the same. In as much as creation and attachment are the same, the Court disagrees with the *Stewart* court's holding that the protection of § 1322(b)(2) is forfeited by the mere pledge of a potential escrow account. " It is recognized as an axiomatic principle that no security interest may attach to collateral that has not come into existence...This principle is made clear by Article 9 of the Uniform Commercial Code which states, as one of the basic requisites of attachment, that the debtor must have rights in the collateral." *47 Fla. Jur 2d Secured Transactions § 179*. Plaintiff can not have rights in something that never existed. Additionally, in order for a security interest to be created in an escrow account, the secured party must have control over the deposit account. The requirement of control is satisfied if a secured party, with respect to the deposit account, becomes the customer of the bank with which the deposit account is maintained. In order for a secured party to be a bank's customer with respect to a deposit account, a deposit account must exist. Master can not have a security interest in a non-existent escrow account. Despite the Master mortgage's reference to an escrow account, Master never acquired a security interest in an escrow account and therefore did not forfeit the protection from modification in § 1322(b)(2) on that basis.

### Assignment of Rents

■ Alternatively, Plaintiff argues that the assignment of rents clause in the mortgage takes the mortgage out of the class of mortgages protected from modification by § 1322(b)(2). With certain exceptions,

none of which applies here, § 679.1091(4)(k) of the Florida Statutes excludes from secured transactions in personalty "the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder..." Implicit in the statute's exclusion of rents from its scope is the notion that rent generated by real property is an interest in real estate, not personal property. Additionally, Florida real property law designates the right to rents as an incorporeal hereditament or interest that runs with the land. *Rolle v. Chase Manhattan Mortgage Corp.*, 218 B.R. 636, 639 (Bankr. S.D.Fla.1998) (citations omitted). Because the right to rents from real property in Florida is not personal property but rather inextricably bound to the real property itself as part of the possessory bundle of rights, a creditor's security interest therein does not remove it from the class protected by § 1322(b)(2) as a creditor whose claim is secured only by a security interest in real property that is the debtor's principal residence. *See also In re Mendez*, 255 B.R. 143 (Bankr.D.N.J.2000) (holding that assignment of rents in mortgage did not forfeit protection from modification in § 1322(b)(2) because rents are included in the definition of real property under New Jersey law); *In re Steslow*, 225 B.R. 883 (Bankr.E.D.Pa.1998) (holding that assignment of rents in mortgage did not forfeit protection from modification in § 1322(b)(2) because rents are included in the definition of real property under Pennsylvania law). Accordingly, Master did not forfeit the protection of § 1322(b)(2) as a result of the assignment of rents clause in the Master mortgage. Upon the foregoing, it is

**ORDERED:**

1. Master Financial, Inc.'s Motion to Dismiss is granted.

2. Master Financial, Inc. is dismissed as a defendant in this adversary proceeding.